## J. B. Larzelere & Son, Appellants, v. Gustavus W. Tiel and Edgar A. Tooley, Copartners, trading as Tiel & Tooley, and David Cherry.

*Partnership—Application of firm assets to individual debt.*

When copartners by their language or actions authorize or ratify the application of firm assets to the payment of the individual debt of one of them, all will be bound by such application. The question is primarily one of consent, and consent may be gathered and inferred from the attending circumstances, such as the knowledge of the other partners that the assets are being so applied, and their acquiescence therein.

Where property for which an individual partner was indebted went into the partnership stock, under an agreement that the firm should assume the balance due for it, and that was the consideration for the transfer, then in equity and good conscience it became the firm's debt; and if they assumed it by their notes, they cannot repudiate those obligations.

*Practice, C. P.—Province of court and jury—Unfair comments on evidence.*

Courts and juries are organized for the purpose of administering justice through the forms of law. The function of the court is to direct the course of the trial within the rules of procedure and evidence and to expound the law applicable to the questions raised for the guidance of the jury. In commenting on the evidence the court should deal with that of both sides equally and impartially, and leave with the jury their exclusive right to determine the facts.

To present one side of the evidence, to belittle that of either side, or to say there is no evidence on a material point when in fact there is, all of

which was done in the case at bar, is unfair and erroneous, and the ends of justice will peremptorily demand a reversal.

*Biased charge not cured by declarations that evidence was for the jury.*

An erroneous charge cannot be cured even by frequent declarations to the jury that all the evidence was for their consideration.

To hold that a trial judge may partially and inadequately present the facts to a jury in positive terms, and that the injured party has no remedy for this, simply because he told them that his opinion was not binding upon them, would be grossly unjust, and subject the administration of the law to ridicule and contempt.

*Practice, C. P.—New trial—Misleading and inadequate charge.*

With the evidence preponderating greatly in favor of the plaintiffs, it is error for the trial judge to deliver a charge to the jury which in phrase and substance was marked by a very strong bias in favor of the defendants; and in which the brief allusions to the evidence are opposed to the weight of the testimony, and where, in the light of the evidence, the instructions were so inadequate, unwarranted, misleading and inconsistent, that the jury could deduce no intelligent or correct rule to guide them.

Argued Oct. 14, 1896.  Appeal, No. 103, Nov. T., 1896, by plaintiffs, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1894, No. 896, on verdict for defendant.  Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Feigned issue framed by agreement of parties.  Before FINLETTER, P. J.

The following facts were stated in the opinion of the Superior Court:

" This feigned issue was formed for the purpose of ascertaining the amount due by Tiel & Tooley on a judgment confessed to Larzelere & Son, the appellants.

"On June 1, 1894, G. W. Tiel and E. A. Tooley agreed in writing to become partners in the teaming business.  It was stated in the articles, inter alia, that 'G. W. Tiel contributes ten head of horses and five wagons, with an indebtedness against them of about $700, one half of which the said E. A. Tooley agrees to assume,' and it appears that Tooley contributed $100 in wagons and $30 in cash.  Prior to this time, Tiel had been in the business himself, and had purchased nine of these horses from the appellants; and he owed on them, when this partner-

ship was formed, a balance of $461.29, for which he gave his individual notes. He was also indebted to others at that time, whose claims, he alleges, were included in the indebtedness stated in the articles.

"The new firm continued to deal with the appellants, bought property from them from time to time for use in the business, and gave the firm notes in part payment. As the individual notes of Tiel matured, payments were made on them from the firm's moneys, and firm notes were given in renewal for the balances, and ultimately, by payments and renewals, they were taken up with firm money and paper. Tiel seems to have managed the financial part of the business, principally, and gave all the notes, except one for $330, which was signed by Tooley, and included some of Tiel's old debt to the appellants.

"On January 23, 1895, one of the appellants went to Tiel & Tooley and made a settlement of their business dealings, when it appeared that they owed the appellants $729.46. Both Tiel and Tooley were present at this settlement, and the latter wrote down the items of this indebtedness as given by Larzelere. On February 12, 1895, Tiel confessed a judgment to the appellants in the firm name for the sum of $738.03, the amount then claimed as due, and represented by the firm's bank notes held by the appellants. Afterward Tooley confessed a judgment in the firm name to David Cherry for $320.25. Executions were issued on both judgments, the firm property was sold, and the proceeds paid into court to await the determination of the issue.

"A verdict was rendered in favor of the appellants for $207.03, which would appear from the testimony to be the amount due them, excluding the individual indebtedness of Tiel; and from the judgment entered on that verdict this appeal was taken.

"The facts related were testified to on the trial and were not contradicted. It was further testified, on behalf of the appellants, that the indebtedness mentioned in the articles included the balance then due them by Tiel, that Tooley knew this and expressly agreed to assume it as a firm debt, and that until paid it was to be included in the firm notes which were to be given in renewal; that Tooley was aware of the giving of the several notes and of Tiel's individual debt having been included in them; and that Tooley actively participated in the final settlement, when the whole matter was canvassed and adjusted,

and the balance ascertained. These facts were all testified to
by Tiel and largely corroborated by Larzelere, and were also
corroborated by the partnership articles, by a receipt given in
July, 1894, showing the substitutions of the firm paper for
Tiel's, by the notes given for that purpose, and by a memorandum made by Tooley himself. Tiel also testified that at the
formation of the partnership he named the appellants, with
Mr. McDondall and David Cherry, as his creditors, and mentioned that the Larzelere notes were coming due and that
Tooley then promised to furnish money to meet them, but did
not do so.

"The only evidence against the appellants' contention is the
testimony of Tooley. He said that he understood from Tiel,
when the partnership was formed, that the appellants' claim
was very small, and that the $700 mentioned in the agreement
was due mostly for feed; that it was not to be applied to the
payment of any specific indebtedness, but was for the general
debts of the firm. He denied that he ever agreed to assume, as
a member of the firm, the indebtedness of Tiel to the appellants,
or that there was any arrangement for its assumption under the
agreement, and that he did not know of its inclusion in the firm
obligations. Yet, he admits that he himself signed and gave
the appellants one firm note for $330, 'for the $700 indebtedness,' and says that was the understanding with Tiel when he
gave it.

"It was not denied that the appellants' claim against Tiel was
part of the price of the horses furnished the firm under the
agreement, and was therefore an indebtedness of the character
mentioned in the articles, nor that the sum for which judgment was confessed was due to the appellants. Tooley did
deny that any part of the indebtedness mentioned in the articles was for the claim of the appellants; but he did not attempt
to show to whom it was due, or what the general debts of the
firm were which he alleged it was to pay; nor did he try to
explain how the firm, on organizing, could have had any 'general debts.'"

The court charged the jury as follows:
"When this partnership was formed, articles of agreement
were drawn in writing, and that is the law of the parties them-

selves.  By these articles of copartnership Mr. Tooley agreed that $700 of the indebtedness of his partner, Tiel, should be considered as a partnership debt.  That is to say, he agreed with his partner that the debt might be paid out of the partnership assets at any time satisfactory to the parties.  (It gets his partner to pay that much of his private indebtedness out of the firm funds, but it does not give any individual creditor of Mr. Tiel the right to sue either the partnership or Mr. Tooley for a debt which was due by the other partner to them.  [Before Mr. Tooley could be made responsible for a private debt of his partner, it must be shown that he expressly agreed, not that Mr. Tiel would pay it, but that he expressly agreed, between the creditor and Mr. Tooley, that it should become a partnership debt and be paid out of its funds.] [3]  [It is an easy matter, and it would have been for this plaintiff, had he entered into any private arrangement with Mr. Tiel as to his debt—I say it would have been an easy matter, as suggested by counsel, and it was his duty to say to Mr. Tooley, his partner, ' Mr. Tiel has entered into an agreement with me as to the debt he owes me that it shall become a partnership debt.  Are you satisfied with that arrangement? '  If that had been done there could be no dispute about the matter and no litigation.  But there was no direct communication with Mr. Tooley.  There is no evidence in this case even that his partner, so far as I can recollect the testimony, definitely and positively went to him and said, ' I owe Mr. Larzelere so much money, and I have agreed that it shall become a partnership debt.'] [2]  [Now before you can render a verdict in this case for a debt which Mr. Tiel owed, or any portion of it, there must be evidence that Mr. Tooley expressly agreed with Mr. Larzelere that it should become a partnership debt, and it is your duty to find that by evidence, and not by inference.  It would be a very great injustice to his partner to infer it simply from transactions which afterwards occurred.] [4]  [Mr. Tooley did not keep the books or take the receipts which were given, and in fact knew nothing about the transaction ; at least he has sworn so, and there is no evidence to the contrary.  It would be a great hardship if one partner is made liable for such a debt unless there is evidence of it.] [1]) [5]  Before that can be done it should appear either in writing, or from evidence, that the partner who is so charged

with the indebtedness thoroughly understood the agreement as made, and how much the debt was, and everything in relation to it. I have already said that I have not seen any evidence of that kind; but that is only my own opinion, and is not binding upon you. If you can find in this case that under the evidence, with a knowledge of all the facts, Mr. Tooley, by inference or expressed words, agreed to pay Mr. Larzelere this debt, then he is responsible. In other words, it becomes a partnership debt, and Mr. Tiel would then have a right to give this judgment note. If there is no such evidence, then just so far as that judgment note embraced the private indebtedness of Mr. Tiel, so much must that be abated. I have not followed the calculations of counsel in this matter, but if that is the only matter in dispute, then it is easy, and the verdict in this case should only be for the difference between the outstanding debt of Mr. Tiel and the amount of the judgment."

Verdict for plaintiffs $207.03. Plaintiffs appeal.

*Errors assigned* inter alia were, (1–4) portions of the general charge, reciting same as indicated in brackets; (5) because the learned trial judge in his charge to the jury commented favorably upon the theory and evidence of the defendants without doing the like for the plaintiffs.

*Henry C. Boyer,* with him *George P. Rich,* for appellants.

*John S. Freemann,* of *Keator, Freemann & Jenkins,* with him *E. Cooper Shapley,* for appellees.

OPINION BY SMITH, J., December 7, 1896 (after stating the facts as above):

With the evidence preponderating greatly in favor of the plaintiffs, the learned trial judge delivered a charge to the jury which in phrase and substance was marked by a very strong bias in favor of the defendants. The brief allusions to the evidence in the charge are opposed to the weight of the testimony, and, in the light of the evidence, the instructions were inadequate, unwarranted, misleading and inconsistent.

The agreement does not provide, as the learned judge said, that the debt mentioned in the articles should be considered a

partnership debt, to be paid out of the partnership assets. Tooley agreed to assume one half of the indebtedness " against " the property contributed by Tiel; but without more this would not make it a partnership debt; nor is there anything in the agreement limiting its payment to the partnership assets. Prima facie and by implication the one half of the indebtedness in the articles was assumed by Tooley in consideration of the equal interest he acquired in the property contributed by Tiel, and an action for it might be maintained against Tooley upon delivery of the property to the firm. True the partners might have made it a firm debt in the agreement, or by a subsequent one, and being the purchase money of property received by the firm there would be an equitable consideration; but the language of the articles will not justify such a construction. This erroneous view leaves out of sight the terms of the articles, as well as the testimony of Tiel to the effect that Tooley was to pay down from $300 to $400, which was to be applied to the appellants' claim against Tiel. The learned judge's construction of the articles would limit Tooley's liability for the one half of his debt to his interest in the partnership assets, and if these were lost before its payment, he would be absolved from personal liability and the debt would remain Tiel's alone. Tooley, it is true, said that his part was to be paid out of the earnings; but Tiel's testimony is to the contrary, and the point was in dispute.

There is nothing in the testimony indicating that the firm assumed any of this debt, except what is due to the appellants, or relieving Tooley from his liability according to the provisions of the articles. The court was greatly in error in saying to the jury that Tooley knew nothing about the transactions upon which the appellants based their claim against the firm, and that there was no evidence contradicting Tooley's testimony to that effect, opposed as it was by the testimony of two witnesses, the documentary proofs, a part of which Tooley made himself, and Tooley's admission that he signed one of the notes to the appellants given in payment of " the $700 indebtedness," and which in fact included a part of the Tiel debt, and that this was the understanding when he gave it. It was equally erroneous for the court to instruct the jury that it was the duty of the plaintiffs to go to Tooley and inform him that Tiel agreed to make their claim a partnership debt and get his assent to it. This might

have been a prudent step, but no such duty rested upon the appellants. According to the testimony of the appellants' witnesses this would be superfluous, as they testified that Tooley had agreed to the assumption of the debt, and it had been carried by the firm paper with his consent for over six months. The instruction would naturally mislead the jury into believing that Tooley could not be bound unless he agreed with the appellants personally; in this, the learned judge ignored all the testimony to the effect that Tooley had so agreed, and laid down, as a rule of law, a measure of duty unwarranted by legal authority.

It was misleading to suggest to the jury that Tiel should have gone to Tooley and "definitely and positively" said to him: "I owe Mr. Larzelere so much money, and I have agreed that it shall become a partnership debt." The parties had a right to transact the business in their own language and in their own way; the law does not prescribe the language or actions of men in everyday business life, and courts and juries are concerned only with that which actually took place and its legal effect: Phila. Trust etc. Co. v. Railroad Co., 177 Pa. 38. It would have been more to the point to have called the attention of the jury to what had been said on behalf of both parties, and stated for their guidance the rules of law applicable thereto. Nor is there any authority to sustain the instruction of the learned judge, that before they could find for the appellants "there must be evidence that Mr. Tooley expressly agreed with Mr. Larzelere that it should become a partnership debt, and it is your duty to find that by evidence and not by inference. It would be a very great injustice to his partner to infer it simply from the transactions which afterwards occurred. It would be a great hardship if one partner is made liable for such debt, unless there is evidence of it." It is settled law that when copartners by their language or actions authorize or ratify the application of firm assets to the payment of the individual debt of one of them, all will be bound by such application. The question is primarily one of consent, and this may be gathered and inferred from the attending circumstances, such as the knowledge of the other partners, that the assets are being so applied, and their acquiescence therein: Todd v. Lorah, 75 Pa. 155; Leonard v. Smith, 162 Pa. 284.

But is this a case where one partner seeks to pay his individual debts with the firm's assets? If, as indicated by the articles and the testimony for the plaintiffs, the property for which Tiel was indebted to the appellants went into the partnership stock, under an agreement that the firm should secure or assume the balance due for it, and that was the consideration for the transfer, then in equity and good conscience it was the firm's debt; and if they assumed it by their notes, they cannot now repudiate those obligations, and the court should have so instructed the jury: Lindley on Partnership, 705; Siegel v. Chidsey, 28 Pa. 279; Walker v. Marine Bank, 98 Pa. 574.

The remarks of the learned judge, that it would be a great injustice to Tooley to infer the assumption of the appellants' claim from the transactions after the organization of the firm, were clearly erroneous. If, as testified, Tooley knew and assented to the giving of the notes which included the appellants' claim against Tiel, and gave one of them himself, then the jury were bound to infer this, if indeed inference were necessary, from those subsequent transactions. This remark and the subsequent one that " It would be a great hardship if one partner is made liable for such a debt unless there is evidence of it," were both uncalled for, and naturally prejudiced the jury. If the positive evidence, oral and written, to the effect that Tooley did assume the appellants' claim against Tiel, be true, it was in effect telling the jury that it would be " a great injustice " and " hardship " to make him pay for the property which he bought and held as copartner. It was also an error to say that the agreement to pay the appellants' claim should be found " by evidence, and not by inference," and at another time to say that they might find it " by inference or expressed words." From these inconsistent statements, the jury could deduce no intelligent or correct rule to guide them.

But it is contended that even if the learned judge erroneously said there was no evidence on material points, and ascribed grave importance to the absence of things which were not essential, yet because he said to the jury, " I have already said that I have not seen any evidence of that kind; but that is only my own opinion, and is not binding upon you;" he thereby left the whole case to them for decision, and hence they were not concluded or affected by his remarks, and the judgment must stand.

That is not the law; on the contrary, our Supreme Court has rightly said that even frequent declarations to the jury that all the evidence was for their consideration does not cure a biased charge : Lerch v. Bard, 177 Pa. 197.

In the case last cited the Supreme Court further says : " We know, the learned judge of the court below and every lawyer knows, how unfavorable may be the impression made upon, generally, untrained thinkers, who must deliberate and form conclusions within a very few hours, by prominently presenting, as the last word to them, only one side of a disputed cause, and this, too, by a judge eminent because of his judicial integrity, and ability ; " remarks peculiarly applicable here.

To hold that a trial judge may partially and inadequately present the facts to a jury in positive terms, and that the injured party has no remedy for this, simply because he told them that his opinion was not binding on them, would be grossly unjust, and subject the administration of the law to ridicule and contempt.

Courts and juries are organized for the purpose of administering justice through the forms of law. The function of the court is to direct the course of the trial within the rules of procedure and evidence, and to expound the law applicable to the questions raised, for the guidance of the jury. In commenting on the evidence the court should deal with that of both sides equally and impartially, and leave to the jury their exclusive right to determine the facts. When the trial judge discusses the evidence the jury are apt to accept his presentation as the correct view of it and find a verdict accordingly. It is therefore of the last importance that the judge should discard all personal views and treat the evidence on both sides with equal candor and consideration. To present but one side of it, or to belittle that of either side, or to say there is no evidence on a material point when in fact there is, all of which was done in this case, is unfair and erroneous, and the ends of justice, therefore, peremptorily demand a reversal of the judgment.

The main issue of fact was whether Tiel and Tooley assumed the individual indebtedness of Tiel to the appellants, expressly, or by a course of dealing which would estop them from denying that they had done so, and it called for the application of simple and familiar principles of law.

The partnership articles bound the partners, and Tooley's allegation, denied by Tiel, that the indebtedness mentioned was for feed and not for horses and wagons as stated in the agreement, could not prevail against the writing unless sustained by another witness or corroborating circumstances; the agreement being silent as to the exact amount of the debt and to whom it was due, oral testimony might be resorted to in order to ascertain those facts, if they became material. If the partners agreed to pay, or to assume by notes, the balance due to the appellants on property contributed by Tiel to the partnership stock, in lieu of paying Tiel for it, and payments were made and notes given for that purpose, the transaction was lawful and binding; the firm was but paying for the property transferred to it.

The seven assignments of error are to the charge and answers to points. The sixth and seventh were not argued or pressed; the first five are sustained, the judgment is reversed and a venire facias de novo is awarded.