# Hayes *v.* Pennsylvania Railroad Co.

*Negligence—Railroads—Defect in overhead bridge.*

In an action against a railroad company to recover damages for personal injuries sustained by a fall on an overhead bridge alleged to have been caused by a hole in the footwalk, a charge is fatally defective which merely states to the jury that if the defendant was guilty of negligence the plaintiff could recover, without any instructions as to the degree of care required of the defendant in keeping the bridge in repair.

*Trial—Charge of the court—Inadequate charge.*

A judgment on a verdict for plaintiff in a negligence case will be reversed, where the court in the charge makes prominent and conspicuous the testimony of the plaintiff, without adverting in any way to the defendant's testimony, which if believed by the jury might have resulted in a different verdict.

Where in a negligence case there is conflicting evidence as to the defendant's negligence, a judgment for the plaintiff will be reversed where the court in the portion of its charge relating to damages assumes the defendant's negligence, and uses language from which the jury would infer that their only duty was to assess the damages.

Argued Jan. 9, 1900. Appeal, No. 254, Jan. T., 1899, by defendant, in suit of Honora V. Hayes *v.* The Pennsylvania Railroad Co., from judgment C. P. No. 1, Phila. Co., Dec. T.,

1897, No. 411, on verdict for-plaintiff.   Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.   Reversed.

Trespass for personal injuries.   Before BIDDLE, P. J.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were (1) that the entire charge of the trial judge was inadequate in failing to instruct the jury that defendant was not an insurer of travel on the bridge, but that its duty to the public was that of ordinary care; (2) that the entire charge of the trial judge was inadequate in failing to present the evidence of the defendant, and in its assumption that a verdict should be rendered for the plaintiff.

*David W. Sellers*, for appellant.—As the bridge was on the line of Forrest street, the duty of the railroad was the same as that of the borough.   The duty was that of ordinary care.   A latent defect, such as the plaintiff claimed existed, would not impose a liability.   If the plank gave way under her heel notice was required of its defective condition before liability attached: Lohr v. Philipsburg Boro., 165 Pa. 109; Davis v. Corry City, 154 Pa. 598; Burns v. Bradford City, 137 Pa. 367.

The charge was wholly inadequate: Cooley v. Traction Co., 189 Pa. 563.

*D. Webster Dougherty*, with him *Robert B. Kelly*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, March 26, 1900:

This action was brought by Honora V. Hayes to recover damages for injuries which she alleges she sustained by reason of the negligence of the Pennsylvania Railroad Company in failing to keep in repair a bridge on Forrest street in Conshohocken borough, Montgomery county.   The defendant company, in the construction of its Schuylkill Valley Branch in 1884, cut down the bed of Forrest street and erected this bridge to span its tracks at that point.   The bridge has since been maintained and kept in repair by the company.

On the evening of November 30, 1897, at about 6 o'clock, the plaintiff was crossing on the footpath on the west side of the Forrest street bridge when the heel of the shoe on her left

foot sank into the walk and she was thrown to the floor. She thus sustained injuries for which this action was brought.

The first assignment of error alleges that the entire charge of the trial judge was inadequate in failing to instruct the jury that the defendant was not an insurer of travel on the bridge but that its duty to the public was that of ordinary care. The appellee concedes that the defendant cannot be held responsible for a defect in the bridge unless actual or constructive notice of the defect has been brought home to it. She maintains, however, that the evidence submitted by her fairly warranted the jury in finding that the defendant had not only constructive but actual notice that, at the time of the accident and prior thereto, the planking on the sidewalk was worn out and unsafe. It is claimed on her behalf that this question was properly and adequately submitted to the jury, and that there was no question as to the measure of duty imposed on the defendant to repair the bridge.

The learned court below used the following language to which this assignment refers: " Of course, the first question is, has the railroad been guilty of any negligence, because that is the very foundation of the suit. If they have not been guilty of negligence, of course they are not responsible for the accident, however painful it may have been. The contention is, however, that this bridge was kept, and was known by the Pennsylvania Railroad to be, in a dangerous condition. The plaintiff contends that she has brought proof to show you that they had been notified again and again, not perhaps of this particular hole, but that the bridge was in such a condition as that pressure upon certain parts of it would produce a hole, and therefore she contends that they cannot say they were ignorant of the condition of the bridge. You have heard the plaintiff describe the accident which happened, how her shoe got apparently into this hole, and she was thrown violently to the floor. Of course, if you believe those facts and that, without any negligence on her part she was injured by reason of the negligence of the railroad, then she would be entitled to such damages as you may think would compensate her for the injury she has sustained. That, gentlemen, is one of the most important questions in these cases which, as of course you know, are very numerous."

It will be observed that the duty of the defendant in regard to keeping the bridge in repair is not defined, nor is there anything in the charge which indicates to the jury what was the measure of the defendant's duty in this respect. The court tells the jury that "if you believe those facts and that without any negligence on her part, she was injured by reason of the negligence of the railroad, then she would be entitled to" recover. The substance and effect of the charge is that if the defendant was guilty of negligence, the plaintiff could recover. Without more, this was insufficient. The jury could not determine whether the defendant was guilty of negligence without knowing the degree of care required of the defendant in keeping the bridge in repair. The absence of this care would constitute the negligence for which the defendant would be responsible. Hence, the court should have instructed the jury clearly and distinctly as to the duty of the defendant in the premises, and the failure to do so was error.

The second assignment of error alleges that the charge was inadequate in failing to present the evidence of the defendant, and in its assumption that a verdict should be rendered for the plaintiff.

We have quoted above that part of the charge which refers to the claims of the parties and the testimony adduced in support of them. The court called attention to the claims of the plaintiff and her testimony describing the accident. In no part of the charge is there any reference to the position maintained by the defendant or to its evidence. As a justification for this omission, the plaintiff's counsel alleges that there was absolutely no testimony on the part of the defendant in contradiction of plaintiff's witnesses as to the condition of the bridge on the day of the accident. It is evident that such was the view of the court, and hence he presented the case to the jury for their determination solely on the " claim " and testimony of the plaintiff.

W. J. Beard testified on behalf of the defendant. At the time of the accident, he was the defendant's foreman of carpenters and had this bridge under his charge. He says the floor of the bridge was laid by him in 1894; that it was of suitable material; that he was on the bridge the day of the accident and " there were no holes there," and that when he saw

the hole the morning after the accident, "it looked to me as if something had struck it violently and broken the hole through there." He then further testified as follows: "On the morning that this accident occurred,—rather on the 18th day of November, 1897,—I received instructions to make measurements of this Forrest street overhead bridge and to get out a bill of materials to rebuild it, which I did. I went there on that morning; made these measurements for this bridge back and forth, took the height, measured the old trusses and examined the bridge pretty thoroughly, I thought; went back to Franklin avenue and made a requisition for the material to rebuild it. The next morning when I came down to work I was handed a note stating that they had met with an accident there the night before and I was told to go and look at it and make the necessary repair. I went down to Conshohocken with one man. I should have said that on the day before while I was measuring this bridge I found no holes in it; I was over the flooring of the bridge two or three hours,—back and forth,—and I don't see how the hole could have escaped my notice because it was my business to look for those things. The next morning I went down there and on the west footwalk,—on the west side of the bridge (which is twelve feet wide)—this footwalk, I found toward the northern end, a small hole. We took the plank out where this hole was and replaced it with a new one, throwing the old plank out in the roadway."

The learned court below wholly ignored this testimony and made no reference to it whatever in its charge. For what reason we are unable to comprehend. If believed by the jury, the verdict might have been for the defendant. There is nothing in the testimony itself which discredits the witness. On the contrary, he had a motive as well as exceptional opportunities for knowing the condition of the bridge, as it was his duty to examine and keep it in repair. His testimony, therefore, would necessarily have weight with the jury.

An adequate presentation of the case to the jury required the court to direct their attention to the defendant's position and to its testimony. This was done for the plaintiff, and the failure to do so for the defendant would tend to induce the jury to believe that the court discredited the defense. As is said by Mr. Justice DEAN in Lerch v. Bard, 177 Pa. 206: "We know,

the learned judge of the court below and every lawyer knows how unfavorable may be the impression made upon, generally, untrained thinkers who must deliberate and form conclusions within a few hours, by prominently presenting as the last word to them, only one side of the disputed cause. . . . Under such circumstances, the probability is, they will assume there is but one side to the case and that the one to which the court has called their attention specially and at length."

This is not a case where the error alleged is that the court commented more upon the testimony of the plaintiff than that of the defendant, nor where he omitted to charge fully upon the evidence, nor where specific requests for instruction were necessary to convict of error. The court will not usually reverse in such cases. But here, the court drew the attention of the jury in the charge to the claims of the plaintiff and her own testimony, without adverting in any way to the defendant's testimony, and thus submitting the case entirely from the plaintiff's standpoint and under her testimony. This was clearly erroneous. In Reichenbach v. Ruddach, 127 Pa. 598, the present Chief Justice, speaking for the court, says: "If the testimony upon one side of the controverted question of fact is made prominent and conspicuous in the charge, common fairness requires that equal prominence should be given to opposing testimony having a contrary tendency." In the same case it is said: "We have so frequently held that giving undue prominence to the testimony on one side of the case is error, that a reference to the cases is unnecessary."

In closing his charge the learned court below used the following language: "Whatever amount you think you should give should be an amount that you think the plaintiff legally is entitled to receive. You have a right to consider what the learned counsel for the plaintiff has said as to the pain and suffering which the plaintiff has endured and the temporary or permanent nature of the injury which she has sustained. You are to consider all those questions, and, having done that, you will I hope, arrive at a result which is not grossly or absurdly excessive (which I do not think for a moment you would do), but such a verdict as you think is a fair compensation, between man and man, for what the evidence shows has happened in this case."

This assumed the defendant's negligence and practically withdrew the question from the jury. From this language, the jury would infer that their only duty was to assess the damages. The error in this part of the charge is so plainly apparent that it needs no further discussion.

We are constrained to hold that the charge in this case was inadequate and misleading and did not properly present the law and the facts to the jury.

The assignments of error are sustained, and the judgment is reversed with a venire facias de novo.