# A. B. Herrington *v.* M. W. Guernsey and H. D. Guernsey, trading as Guernsey Brothers, Appellants.

*Practice, C. P.—Charge of court—Inadequate and misleading charge.*

A charge is inadequate and misleading which calls the attention of the jury to the testimony of plaintiff's principal witness in support of his claim without alluding to the contradictions in the witness's testimony or to that portion of it in which he conceded that the agreement set up by the plaintiff was not in accordance with the custom of the trade.

*Practice, C. P.—Charge of court—Direction of jury to part of testimony —Reversible error.*

The Supreme Court will reverse a judgment on a verdict for plaintiff where the court called the attention of the jury to a part of the evidence affecting the agreement which formed the basis of the plaintiff's claim without directing their attention to all the evidence and circumstances affecting it.

Argued Feb. 24, 1896. Appeal, No. 440, Jan. T., 1896, by defendants, from judgment of C. P. Lackawanna Co., Jan. T., 1892, No. 422, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Reversed.

Assumpsit to recover commissions on sales. Before LYNCH, J., of the eleventh judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

The court charged as follows :

[The plaintiff in this case founds the principal part of his claim upon an agreement, which he alleges was entered into between him and the defendants in the summer of 1889 ; that he agreed with the defendants to sell for them pianos and organs, that he was to receive a commission on pianos of fifteen per cent, on organs a commission of twenty per cent ; that the sales or bailments, whichever they were, of these instruments were to be at the risk of the defendants, that is that they were to take the risk of getting payment for the instruments; (I am now only reciting the statement of the plaintiff's case;) that in pursuance of this agreement made with him he did sell pianos and organs, and perhaps performed other services for them ; that he has not been paid the sum due, and this suit is brought to recover the sum which he alleges is due him from the defendants.

Now, on the side of the defense, in brief, the employment of the plaintiff is admitted. It is also admitted by the defense that the plaintiff was to receive, for services, fifteen per cent on pianos and twenty per cent on organs sold or bailed, but they say that the sale was not to be at the risk of the defendants ; that the plaintiff was simply to receive a commission on the amount paid by the persons who had the pianos, and that, while they gave him credit for the percentage claimed by him, the

plaintiff agreed that if an instrument was not paid for the proportion of the percentage was to be charged back again to him, which they say they subsequently did. Now that part of the agreement is denied by the plaintiff, and asserted by the defendants. This is peculiarly a question for the jury, and I do not propose to go over the numerous details of facts and evidence here, but to call your attention principally to the main points in dispute.] [1]

The plaintiff, for the purpose of corroborating his side of the case, concerning that branch of it, has called Mr. Rockwell, who states that at the time he was in the employ of the defendants, and as he understood the bargain entered into—you remember he testified that he was the man who suggested the employment of the plaintiff—as he remembers it, the sales were to be at the risk of the defendants. Miss Mills, the bookkeeper for the defendants, as I remember it, and if I am incorrect in that matter you will act accordingly, stated that she was not present, or did not hear the bargain for employment made between these parties.

Now, gentlemen, it is the duty of the jury to believe every witness in the case if it can be fairly done, to reconcile the evidence adduced if possible. If you cannot, however, then it is your province to believe whom you will, taking into consideration the knowledge of the party, their familiarity with the subject in question, their interest in the question at issue, their ability and candor in relating what did happen. The parties themselves, under the law as it now is, are competent witnesses; it is not necessary to say to you that they are interested, and if the jury is satisfied that they cannot reconcile the testimony offered by the parties interested, they have a right to take into consideration and weigh carefully the evidence of any disinterested party in the case.

Now, gentlemen, what was the bargain entered into there? From all the evidence in the case, and the circumstances fairly arising from what occurred there, what was the bargain between these people? This is not a criminal case, you will understand, and you are to decide it upon the preponderance of the credible evidence in the case.

Next it is contended by the defendants, and they have offered witnesses to substantiate that view of the case, that on or about the 23d of August, 1890, the defendants and the plaintiff met

at the defendants' place of business; that the bookkeeper Miss Mills was present, and there, after examining the accounts and such discussion as people have under such circumstances, that they settled everything up to that date, and the defendants offer here a paper which they claim embodies the terms of that settlement. Now if you find that to be the fact, if you find that the parties did then settle, with a full knowledge of what that settlement embodied, they should be bound by it. The plaintiff however denies that he made such a settlement. He said he was there at the time indicated by the defendants, and that they talked the matter over, and had what he called a preliminary settlement, but that he did not examine the paper offered, and did not agree to such a settlement. Now, Miss Mills, the bookkeeper, states that she was present, and that in pursuance of this alleged settlement, she balanced the books, but on cross-examination she stated that she did not know that the plaintiff had examined the paper now offered. Now, what is the truth of that, gentlemen? Did these people fairly, with a full knowledge of the facts as they existed at that time, make a final settlement up to that time? If they did, of course they should be bound to it, or held to it. Miss Mills says that she gave this statement to the plaintiff. Now, do you believe that at that time, gentlemen, there was, with full knowledge of the circumstances then existing, a final settlement of the affairs of these parties? I say if you believe there was, the plaintiff should be held to it. If, however, you believe that he did not understand the terms, was not informed of the state of the accounts at the time, or he did not agree to be bound by that settlement, or that it was not a final settlement, then, of course, he should not be bound by it. It is peculiarly a question for you to determine.

And also, in arriving at the question of employment, or the agreement to employ, and all that is claimed to be a final settlement, you take into consideration what the parties on both sides claim here as material contradictions, which ought to tend to shake the confidence of the jury in the parties. Now, are there such contradictions? Have any of the parties to this case knowingly and willfully testified, either in this proceeding in court, or in the affidavit of defense, or any other paper offered here, to what was untrue? If you believe that to be the case,

you will be justified in not believing anything the same person testified to.  In other words, the rule is, if a person willfully and intentionally testifies to a falsehood concerning a material part of the case, the jury is justified in not believing him at all. I do not say, gentlemen, that you should not believe, but that you would be justified in not believing.

[So that you have perhaps the three leading points in the case : 1st. What was the agreement of employment?  2d. Was there a final and complete settlement in August, 1890 ?  3d. If you find the agreement was as contended for by the defendants, how does the account stand, at present, between the parties ? If you find the agreement was as contended for by the plaintiff, how does the account stand ?

Now, perhaps on many of these questions it is almost impossible for the jury to believe both parties ; on the main and material questions here they differ radically.  The plaintiff alleges one agreement of employment, the defendants, or one of the defendants, positively denies that agreement.  Again, the defendants allege a settlement, a final and full settlement, made between the parties in August, 1890, which the plaintiff denies.  If you adopt the plaintiff's theory of this case, then you will ascertain how much, if anything, is due by the defendants to him.  If you adopt the defendants' theory of the case, then you will ascertain whether there is anything due the plaintiff, or whether under the plea of set-off, instead of anything being due him, the balance is in favor of the defendants, and, if so, you may certify how much.] [2]

Verdict and judgment for plaintiff for $772.79.  Defendants appealed.

*Errors assigned* were (1, 2) portions of charge as above, quoting them ; (5) that the charge was inadequate and misleading.

*C. H. Welles* and *S. B. Price*, for appellants.—The charge was inadequate and misleading: Nieman v. Ward, 1 W. & S. 68 ; Relf v. Rapp, 3 W. & S. 27 ; Garrett v. Gonter, 42 Pa. 143 ; Harrisburg Bank v. Forster, 8 Watts, 304 ; Mildren v. Penna. Steel Co., 90 Pa. 317 ; 11 Am. & Eng. Ency. of Law, 251, 253 ; Potter v. C. R. I. & R. Co., 46 Iowa, 399 ; Dassler v. Wisley, 32 Mo. 498.

*Everett Warren,* with him *Henry A. Knapp,* for appellee.—
If the charge as a whole fairly leaves the questions of fact to
the jury it is sufficient: Reese v. Reese, 90 Pa. 89; Navigation
Co. v. French, 81* Pa. 366;. R. R. v. Coon, 111 Pa. 430; Canal
Co. v. Harris, 101 Pa. 93; Smith v. Meldren, 107 Pa. 348;
Dimmick v. Sexton, 125 Pa. 334; Borham v. Davis, 146 Pa. 72.

The omission to charge on a particular point in a civil case
when no request is made is not ground for error: R. R. v. Getz,
113 Pa. 214; Kurtz v. Haines, 15 Atl. Rep. 716.

OPINION BY MR. JUSTICE McCOLLUM, October 5, 1896:

All the specifications of error relate to the charge, and the
contention based upon them is that it was inadequate and mis-
leading.   In order to determine whether this contention is well
founded we must consider in connection with the charge the
issues of fact made by the conflicting claims, and the evidence
submitted in support of and against them.

The plaintiff claimed that under an oral agreement with the
defendants he sold for them, and at their risk, pianos and organs
for a commission of fifteen per cent on his sales of pianos, and
a commission of twenty per cent on his sales of organs, while
the defendants claimed that he guaranteed the sales and that
their liability for commissions was measured by the amounts
received on account of them.   The defendants also claimed that
they had a settlement with the plaintiff on the 23d of August,
1890, of all accounts between them to that date, which settle-
ment disclosed a balance in his favor of $179 that was promptly
satisfied by a sale to him of three organs for $170, a cash pay-
ment of $3.00 and a discount of $6.00.   It was further claimed
by the defendants that the settlement was made by the parties
with a correctly itemized statement before them, of the accounts
as they appeared on the defendants' books ; that these accounts
were kept in accordance with the agreement between the parties,
and that they were so kept was recognized and admitted by the
plaintiff.

The plaintiff conceded that he had a settlement with the de-
fendants at the time mentioned by them, but he characterized it
as a "preliminary settlement," and his testimony explanative
of it was vague and unsatisfactory.   He said, however, that he
did not remember of seeing the itemized statement referred to

as before and examined by the parties when they made the settlement, and that he never agreed that any portion of the commissions with which he was credited should be charged back to him.    The defendants' claim respecting the settlement was supported by their own testimony and that of their bookkeeper, while the plaintiff's qualified denial of it had no support except in his own uncorroborated evidence.    This claim was important because if established it would have eliminated from the case every item of the plaintiff's account which antedated the settlement.    It was consistent with, and the evidence supporting it was corroborative of, the claim of the defendants respecting the agreement under which the sales were made.    The only direct support of the last mentioned claim was in the testimony of the defendants and this was opposed by the testimony of the plaintiff.    It was said by the court in the charge that the latter was corroborated by Rockwell, that as he remembered the agreement " the sales were to be at the risk of the defendants."    It should have been stated in this connection that Rockwell when questioned about the agreement between the parties said :  " All that I can remember very positively was that he (the plaintiff) was at work for them (the defendants) on the road, he was to pay his own expenses, that he was not to have a regular salary, but was to receive commissions ; the commissions were to be fifteen per cent on pianos and twenty per cent on organs," and when further questioned respecting it he said " there was nothing said about anything in my hearing except that he was to have fifteen and twenty per cent."    It was also said in the charge that " the plaintiff alleges one agreement of employment, and the defendants, or one of the defendants positively denies that agreement."    The charge upon this branch of the case was inadequate because while it called the attention of the jury to Rockwell's testimony it did not allude to the contradictions in it, or to that portion of it in which he conceded that the agreement claimed by the plaintiff was not in accordance with the custom of the trade ; and it was misleading because the jury might have reasonably concluded from it that the defendants' version of the agreement rested upon the uncorroborated testimony of one of them.

The usage of the trade as explained by Rockwell was to allow the agent to retain one half the amount paid on the instrument

until the amounts so retained equaled the commission he was to have for selling it. If his commission was twenty per cent on an instrument sold for $100 payable in monthly installments of $5.00, the payment of eight installments divided as above stated would satisfy it. If, however, after the payment of two installments the instrument was surrendered to the dealer on account of the purchaser's inability to pay for it the agent would receive but $5.00. In other words the agent looked for his commission to the payments made by the purchaser.

An agreement which ignored the usual custom of the trade, which gave the plaintiff liberal commissions and allowed him to sell to whom he pleased at the risk of the defendants, and which required them to pay the full commission when the amount realized from a sale was not equal to one fourth of it was an anomaly. A majority of the so-called sales on which commissions were claimed and recovered were leases of instruments which were returned to the defendants. These instruments were valued at $3,680, the whole amount paid upon them before they were returned was $609.75 and the plaintiff's commissions were $583.49. The payments made on nine of these instruments amounted to $162, and the commissions to $383.77. These figures show a loss to the defendants on nine instruments of $221.77, and to this may be added the cost of delivery and the difference in market value between new and second-hand instruments. The figures are based on a statement in the appellant's printed argument which is not denied by the appellee.

The lease of an instrument is not a sale of it. It is true that the lease gave to the lessee an option to purchase at a price stated therein but it did not make him the owner of the instrument. There is a broad and plain distinction between a sale of property and a lease of it, and strictly speaking an agreement for a commission on the former would not include or apply to the latter. But as the parties made no distinction between them, and the business of the defendants included leases as well as sales we may fairly infer that the commission was the same in each case.

We think that the court, having referred in its charge to a part of the evidence affecting the issue concerning the agreement, should have directed the attention of the jury to all the

evidence and circumstances affecting it, and that its failure to do so was prejudicial to the defendants' cause. We have already mentioned some of the omitted matters and to these we may add the obvious inadequacy of the reference in the charge to the testimony of Miss Mills.

The fifth specification of error is sustained.

Judgment reversed and venire facias de novo awarded.