# Commonwealth of Pennsylvania *v.* William Goldberg, Appellant.

*Criminal law—Province of court and jury.*

It is error for the court to charge the jury that they are not only judges of the facts but the law, accompanying that statement with the declaration that they might disregard anything that the court might say to them as to the law in the case; and this erroneous instruction is not cured by saying to them that they were not likely to do that; although they were the judges of the law they would likely take the view as expressed by the court as being correct, because it is presumed that the court would know the law better than they.

*Criminal law—Duty of jury as judges of law and fact.*

In criminal cases the jury has the right to determine the law and the facts under the direction of the court.

It is the duty of the jury to take the best evidence of the law as it is to take the best evidence of the facts.  When they refuse to do either they disregard their duty and their oaths.  The statement of the law by the court is the best evidence of the law within the reach of the jury.

*Jurisdiction, Q. S.—Receiving stolen goods.*

The Act of March 31, 1860, P. L. 438 does not confer upon the courts of O. & T. exclusive jurisdiction to try persons charged with the offense of receiving stolen goods, where a count for the same is joined with a count for larceny.

*Practice, Q. S.—Two counts, for larceny and receiving—How verdict should be framed.*

Whether an indictment containing two counts, one for larceny and the other for feloniously receiving the same goods knowing them to be stolen, will support a general verdict of guilty, not decided, the court being equally divided in opinion.

Such difficulty can be avoided by directing the jury to determine by their verdict upon which count if either they find the defendant guilty.

*Practice, C. P.—Trial—Inadequate charge.*

Giving undue prominence to the evidence on one side of a case, or of a fact in issue in the case, is error.

A charge is amenable to criticism, where the court having properly and with great care and at considerable length rehearsed the facts which the commonwealth claimed to be corroborative of the testimony of accomplices neglected to make adequate reference to the contradiction to their testimony by disinterested witnesses.

*Criminal law—Evidence—Requisite degree of corroboration of accomplice.*

Where the testimony of an accomplice is corroborated in material parts which affect the defendant and tend to show his connection with the crime, it is not required that the commonwealth shall go further and furnish evidence which, without that of the accomplice, shall be sufficient to lead to the conviction of the defendant's guilt.

*Practice, Superior Court—Defective assignment—Isolated excerpts from charge.*

An assignment will not be sustained which is based upon an excerpt from the charge which does not fairly present the judge's instructions, although in itself and standing alone it might be misleading, if the law is properly expounded in connection with other portions of the charge.

Argued Jan. 18, 1897. Appeal, No. 124, April T., 1897, by William Goldberg, defendant, from judgment and sentence of Q. S. Mercer Co., June Sess., 1896, No. 6 on verdict of guilty. Before RICE, P. J., WILLARD, WICKHAM, REEDER, ORLADY and SMITH, JJ. Reversed.

Indictment for larceny for receiving stolen goods. Before MILLER, P. J.

The defendants, William McCullough and John Hughey withdrew the plea of not guilty and pleaded guilty as indicted. William Goldberg pleaded not guilty. At the trial McCullough turned state's evidence.

There was evidence of a corroborating character tending to show the guilt of Goldberg. Goldberg denied, however, any

knowledge or commission of the crime and introduced evidence tending to contradict the evidence corroborating the testimony of the accomplices, Hughey and McCullough.

Verdict of guilty and sentence thereon.

*Errors assigned* were:

(1.) In charging the jury as follows, to wit: "Under the law of this state you are made the judges not only of the facts but of the law; but inasmuch as you are not supposed to be learned in the law it is the duty of the court in any given criminal case to explain the law to you in order to enable you to arrive at a just conclusion. You could disregard anything that the court might say to you as to the law in this case, but you would not likely do that; while you are the judges of the law you would likely take the view of it as expressed by the court as being correct, as it is presumed that the court would know the law better than the jury."

(2.) In charging the jury as follows, to wit: "A jury embracing twelve citizens as this jury does, is selected without reference to any case which they are called upon to try, and in order to represent, so to speak, the impartial judgment of the community which upon matters of common sense and business is rarely at fault."

(3.) In charging the jury as follows, to wit: First, that "the courts always consider it their duty to advise a jury to acquit where there is no evidence corroborative of the accomplice" and following this with the statement that "there is other evidence in the case, however, to submit to you, and it is for you to determine whether or not that evidence is corroborative of the testimony of John Hughey and William McCullough;" then the learned court below proceeds to cite the testimony of the commonwealth and ends with the statement "I believe, gentlemen, I have referred to about all of the corroborating circumstances."

(4.) In charging the jury as follows, to wit: "Corroboration need not extend to the whole testimony of the accomplice, but it being shown that he, the accomplice, has testified truly in some particulars the jury may infer that he has in others. That is, if you should find from the evidence that the accomplices in this case were corroborated in some particulars that bear upon

this case, then you might infer as is stated in this opinion, that they have testified truly in some matters in which they are not corroborated by other testimony."

(5.) In charging the jury as follows, to wit : In charging the jury that " An additional fact which the commonwealth asks you to believe corroborates the witnesses Hughey and McCullough, is that the defendant was to meet Hughey and McCullough in Cleveland at a saloon on Broadway, which was either, as one of the witnesses said, No. 96 or No. 69, the witness was not certain which. They state that he was to meet them there on Tuesday afternoon, and in corroboration of that the commonwealth has called witnesses to show that William Goldberg did leave Sharon on Monday morning; that before he left he communicated to two newspaper reporters that he was going first to East Liverpool and thence to Wheeling; but that instead of going to those towns they show that he went to Akron and thence to Cleveland, arriving at Cleveland sometime Tuesday forenoon ; and they say to you that that is corroborative of the statement of Hughey and McCullough that he was to meet them at the latter point; the two witnesses state that he was to meet them at a saloon; and it appears that William Goldberg was in Cleveland on Tuesday, and was at a saloon, not on Broadway, but on Orange street, a street that branches off from Broadway and a short distance from Broadway, and that the number of that saloon was 96. They say that is corroborative of the story told by Hughey and McCullough."

(6.) In not affirming, without qualification, the defendant's first point, said point and answer being as follows : " That McCullough and Hughey, the two defendants who have entered the plea of guilty in this case, are what the law calls accomplices, and that the source of their testimony in this case is deemed by the law so corrupt that it is the duty of the jury to acquit the defendant, unless the testimony of such accomplices is corroborated by other evidence in some material matter." *Answer :* " We affirm that point, as explained in our general charge."

(7.) In not calling the attention of the jury to the fact that officer Heasly, a witness called by the commonwealth, testified that Mr. Goldberg had told him on Monday morning that he was going to Cleveland, in connection with his comments on

the testimony of the two newspaper reporters, Gilbert and Hazen, whom he had previously informed that he expected to go to Liverpool and Wheeling.

(8.) In not calling the attention of the jury to the testimony of the following named witnesses, who flatly contradicted the evidence of Hughey and McCullough, viz.: David Hays, Calvin Hays, John Holmes, Mrs. Ida Magee, William McCurdy, S. H. Clepper, George Phillips, Joseph Vennig, Mrs. Goldberg and Augustus Hughey.

(9.) In his charge to the jury as a whole, in that he did not properly direct the attention of the jury to the testimony of the defendant's witnesses, and entirely omitted to call the attention of the jury to the array of evidence produced contradicting Hughey and McCullough, and in assuming that they were corroborated by other evidence in the case.

(10.) The learned court below greatly prejudiced the defendant's case by his language and manner in addressing J. C. Mc-Dowell, a witness called by the commonwealth, as follows : The Court: "Why don't you answer the questions that are put to you?" A. "I try to." Q. "The court thinks you are not trying to. The court knows something about this matter, and would like to have you answer the questions put to you."

And again,

The Court: "If you do not answer the questions put to you I will commit you to jail. I know that you can answer the questions, that you were in my office and you know what took place there. You must answer the questions or I will commit you. The court will not be trifled with by a man of your age."

(11.) In overruling defendant's motion in arrest of judgment and pronouncing sentence upon him, the said motion and the reasons therefor, with the action of the court thereon, being as follows, to wit:

### "MOTION IN ARREST OF JUDGMENT.

"And now, June 27, 1896, comes the defendant, by his attorneys, and files the following reasons in support of the motion in arrest of judgment in this case, filed on the 12th day of June, 1896."

### "REASONS.

"(*a.*) For the reason that the court of quarter sessions had no

jurisdiction to try the defendant on the indictment found in this case and on which his conviction was had; in that said indictment consists of two counts, the first of which charges the defendant with larceny of twenty-four coils of copper wire, and the second count charging him with the crime of receiving the said twenty-four coils of copper wire, knowing the same to have been stolen; the crime charged in the second count being an offense which is triable exclusively in the court of Oyer and Terminer. (b.) For the reason that the verdict rendered by the jury is inconsistent and insensible. (c.) For the reason that there was not sufficient evidence to sustain a verdict of guilty in this case. (d.) For the reason that the verdict of the jury is irregular and not in accordance with law. And now, August 3, 1896, motion in arrest of judgment overruled. And now, August 3, 1896, at request of defendant's counsel, exception noted to this action of the court and bill sealed."

(12.) That the learned court below erred in entering judgment against the defendant and imposing the following sentence, to wit:

" And now, December 24, 1896, the court sentence the defendant, William Goldberg, to pay a fine of five hundred dollars to the commonwealth, the costs of prosecution, return the property stolen if not already done, and undergo an imprisonment in the Western penitentiary of Pennsylvania, situate in the city and county of Allegheny, for and during the period of one year and three months, there to be kept, fed, clothed and treated as the law directs, and stand committed until the sentence be complied with."

*W. H. Cochran* and *A. W. Williams*, with them *Jos. N. Mc-Clure* and *Q. A. Gordon*, for appellants.

*William C. Haus*, for appellee.

OPINION BY RICE, P. J., March 17, 1897:

In Hutchinson v. Commonwealth, 82 Pa. 472–478, Mr. Justice PAXSON, speaking of the effect of a demurrer to the evidence, said incidentally: " It is true a jury are not only judges of the facts in a criminal case, but they are also judges of the

law under the advice and instruction of the court." In Kane v. Commonwealth, 89 Pa. 522, the judge was requested to charge: "The jury are the judges of the law and the fact;" to which he answered: "We decline to affirm this point, and as to it refer to the general charge." In his general charge the judge said, inter alia: "You are the exclusive judges of the facts, they are for you alone. The law is for the court, and you will be governed by it, or you will not, as you have sworn to do, try the case 'by the law and the evidence.' I do not assert that I am infallible. It is human to err, but it is not for you to declare my error." In sustaining the assignment of error to the refusal of the point, Chief Justice SHARSWOOD said: "It has been strongly contended that though the jury have the power they have not the right to give a verdict contrary to the instruction of the court upon the law; in other words that to do so would be a breach of their duty and a violation of their oath. The distinction between power and right, whatever may be its value in ethics, in law is very shadowy and unsubstantial. He who has legal power to do anything has the legal right. No court should give a binding instruction to a jury which they are powerless to enforce by granting a new trial if it should be disregarded. They may present to them the obvious considerations which should induce them to receive and follow their instruction, but beyond this they have no right to go." This language, severed from the context, has led to much misunderstanding; for, as was clearly pointed out by Mr. Justice MITCHELL, in his learned and exhaustive discussion of this question in Commonwealth v. McManus, 143 Pa. 64–93: "If legal power means legal right, then a jury has a right to acquit any prisoner without regard to either law or evidence; for their power to do so is beyond question. . . . A jury may disregard the evidence, but no judge has ever said it had the legal right to do so." . . . The language of the Bill of Rights, which is supposed to recognize the power of the jury to determine the law in criminal cases, is: "And in all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court as in other cases." But this implies that the duty of the court is not merely to counsel but to instruct, and Chief Justice SHARSWOOD, in immediate connection with what we have quoted, said: "The court is

appointed to instruct them, and their opinion is the best evidence of what the law is." But if the jury are bound by their oaths to determine the facts by the best evidence of them it would seem equally to be their duty to determine the law by the best evidence before them of what it is. And this, as we understand the decision in Commonwealth v. McManus, is the law. A request for the instruction that the jury are the judges of the law as well as the fact was answered thus : " I would say this : That you have been sworn to decide this case on the law and the evidence ; that the statement of the law by the court is the best evidence of the law within your reach, and that, therefore, in view of that evidence and viewing it as evidence only, you are to be guided by what the court has said with reference to the law."

On appeal it was held that this was an accurate and carefully considered answer to the point; and was entirely in harmony with Kane v. Commonwealth. Said Chief Justice PAXSON : " It left the jury to decide the whole case upon the law and the evidence,—not upon the law as distinct from the evidence ; and they were instructed as to what was the best evidence of the law. That is to say, in the language of the constitution, they were to determine ' the law and the facts, as in other cases,' under the advice and direction of the court ; they were to look to the court for the best evidence of the law, just as they look to the witnesses for the best evidence of the facts. Thus interpreted and thus administered, this seeming paradox in our criminal law becomes intelligible. A judge who instructs a jury, in a criminal case, that they may disregard the law as laid down by the court, errs as widely as the judge who gives them a binding instruction upon the law. It is the duty of the jury to take the best evidence of the law, as it is to take the best evidence of the facts. When they refuse to do either, they disregard their duty and their oaths." Just how much of substance this interpretation leaves of the doctrine that the jury are the judges of the law as well as of the fact in criminal cases is a question we need not discuss ; it is sufficient for present purposes, to say that whenever it is invoked it is to be applied subject to the explanation and qualification that the jury are bound by their oaths to decide the case on the law and the evidence, and that the statement of the law by the court is the best evidence

before them of what the law is. A judge's statement of the law should be so accepted by the jury, not merely because he is presumed to be better acquainted with the law than they— for that would be true of counsel in the case—but because he speaks authoritatively; for the time being, he is the mouthpiece of the law; he is the person appointed under the constitution to instruct them as to the law, and to decide when it is in dispute, and they are to determine the law under his advice and direction. It follows that the court committed error in charging the jury that they were judges not only of the facts but the law, and accompanying that statement with the declaration that they might disregard anything that the court might say to them as to the law in the case; and this erroneous instruction was not cured by saying to them that they were not likely to do that, and that although they were judges of the law they would likely take the view of it as expressed by the court as being correct because it is presumed that the court would know the law better than they. This falls very far short of an instruction that the statement of the law given by the court is the best evidence of what it is. It belittles the true functions of the court; it places the opinion of the court upon no higher ground than that of counsel in the cause. It is an expression of a belief that the jury will accept the judge's statement of the law as correct, but does not suggest that they ought to do so, or that they would be acting in disregard of their duty if they disregarded it, and decided the case upon their own notions of the law. A jury swayed by passion, prejudice or popular clamor, or disposed to decide a case according to their ideas of abstract justice would find a plausible excuse in such instructions for rendering a verdict flagrantly contrary to law, if counsel could be retained willing to advise them that the law is not as the judge declares it to be. We do not mean to intimate that that happened in the present case, but it might happen under the instructions complained of. To overrule the assignment would be to establish a precedent dangerous in the extreme, and contrary to sound principle. We are unwilling to give our assent to it.

In disposing of the rule for new trial the learned trial judge very frankly conceded that he stated the law incorrectly when he instructed the jury that they might disregard anything the

court might say to them as to the law, but expressed the opinion that the defendant was not prejudiced thereby because the verdict was not contrary to the law as charged by the court. This would be true if there were any way to ascertain the fact. But how could he know, and how are we to know, that the jury did not disregard his instructions as to the law? How are we to know, for example, that the jury accepted the judge's instructions as to the measure of proof required to convict of a crime, and did not decide the case upon the mere preponderance of testimony? There were other legal principles upon which the court instructed the jury at the defendants' request. It was important for him that the jury should be guided by those instructions. Whether they were so guided or disregarded them, as under the instruction as to their functions as judges of the law they were at liberty to do, is a matter of conjecture. It could only be ascertained by a tribunal having power to determine the facts as well as the law, and neither the trial judge nor we have such power. If the jury disregarded the court's instructions as to the law their error is hidden under the general verdict. All that we know,—and it is enough—is that the charge made it possible for them to commit the error: therefore it cannot be safely asserted that the erroneous instruction was not prejudicial. The defendant is equally interested with the commonwealth in having the jury clearly understand, that although, in a sense, they are judges of the law as well as the fact, they are also bound to decide the case on the law and the evidence, and that the statement of the law as given by the court is the best evidence before them of what the law is. In many kinds of cases this might be his greatest and perhaps only safeguard against an illegal and unjust conviction. The first assignment of error is sustained.

The second assignment is not sustained. The language does not necessarily require the construction which the defendant's counsel put upon it; and construed in the light of other instructions the jury could not have understood the judge to mean that they were to voice public sentiment by their verdict.

The third assignment is without merit. The judge fairly left it to the jury to say whether the facts were as alleged by the commonwealth and whether they were corroborative.

The excerpt from the charge quoted in the fourth assignment,

of error does not fairly present the judge's instructions as to the law regarding the corroboration of accomplices. Standing by itself it might be misleading but the judge immediately proceeds to say: " Some facts should be proved by testimony independently of what they have testified, which taken by itself leads to the inference, not the conviction but the inference, not only that the crime has been committed, but that the defendant in this case is implicated in the commission of the crime charged in the indictment." The duty of the commonwealth to corroborate the accomplices as to material matters was further emphasized by the affirmance of the defendant's points. The instruction as a whole was in the language, substantially, of Mr. Justice TRUNKEY, in Watson v. Com., 95 Pa. 418, and was quite as favorable to the defendant as that approved in Kilrow v. Com., 89 Pa. 480. Complaint is made that the court modified the rule as stated in Watson v. Com. by the words " not the conviction but the inference." This was an entirely proper explanation of the language quoted. It is not necessary that an accomplice shall be corroborated upon every material part of his testimony, for if this were required it would be necessary for the commonwealth to prove the whole case without his testimony. Where his testimony is corroborated in material parts which affect the defendant and tend to show his connection with the crime, it is not required that the commonwealth shall go further and furnish evidence which, without that of the accomplice, shall be sufficient to lead to the conviction of the defendant's guilt. This would be absurd. The fourth and sixth assignments are overruled.

The learned judge's recital of the evidence relative to the defendant's trip to Cleveland was a substantially correct statement of the material facts testified to. The inaccuracies, if so they may be called, were so slight and were in such immaterial particulars as not to prejudice the defendant. After a very thorough examination of the evidence it seems to us that the judge's summary was about as fair and accurate a presentation of it as could have been made without reciting it at length. The fifth assignment does not require further notice and is overruled.

The seventh, eighth and ninth assignments relate to the omission of the court to call the jury's attention to the testi-

mony of certain witnesses called by the defendant, and especially the testimony contradictory of Hughey and McCullough. It could hardly be expected that the court would refer at length to every small detail in which the testimony of these witnesses was contradicted. But as the court, very properly, had with much care and at considerable length rehearsed the facts which the commonwealth claimed to be corroborative of their testimony it was due to the defendant that some reference should be made to the contradictions of their testimony by disinterested witnesses. Giving undue prominence to the evidence on one side of a case, or of a fact in issue in the case, is error. This has been very emphatically declared in some very recent decisions: Phila. Trust etc. Co. v. P. & E. R. R. Co., 177 Pa. 38; Herrington v. Guernsey, 177 Pa. 175; Lerch v. Bard, 177 Pa. 197; Minick v. Gring, 1 Pa. Superior Ct. 484; Larzelere v. Tooley, 3 Pa. Superior Ct. 109. We are of opinion that the learned judge unintentionally fell into this error and that the charge is amenable to this criticism.

The tenth assignment relates to the remarks made by the court in the presence of the jury to the witness McDowell. But, as no exception was taken at the time, the assignment could not be considered even if it had merit, and is dismissed.

The eleventh assignment raises a question as to the jurisdiction of the court of quarter sessions to try the indictment because it contained a count for receiving stolen goods knowing them to have been stolen. The same question was raised in Holmes v. Commonwealth, 25 Pa. 221, and again in Fulmer v. Commonwealth, 97 Pa. 503, and in both cases it was held that the quarter sessions had jurisdiction. The latter case was decided after the repeal of the Act of May 25, 1878, P. L. 147, by the Act of May 13, 1879, P. L. 54; therefore we need not now consider what effect, if any, that legislation had. The jurisdiction conferred on the quarter sessions by the act of 1860, as construed in Fulmer v. Commonwealth has not been taken away. The assignment is overruled.

This indictment was drawn under the 24th section of the Act of March 31, 1860, P. L. 436, which provides that "in every indictment for feloniously stealing property it shall be lawful to add a count for feloniously receiving the said property knowing it to have been stolen." In the case of Com. v. Stahl, 1 Pa.

Opinion of the Court.     [4 Pa. Superior Ct.

Superior Ct. 496, the indictment did not show on its face that it was drawn under the statute, and in that respect the case is distinguishable from the present. In the case at bar the question 'is squarely raised whether an indictment containing two counts, one for larceny and the other for feloniously receiving the same goods knowing them to have been stolen will support a general verdict of guilty. Upon this question the judges of this court who heard the case are equally divided in opinion ; therefore the assignment of error is not sustained, and we refrain from any discussion of the question. But as the judgment and verdict must be set aside upon other grounds, we remark that upon the retrial of the case the difficulty can be avoided by directing the jury to determine by their verdict upon which count, if either, they find the defendant guilty.

The judgment is reversed and a venire facias de novo is awarded.