## Levene *v.* Lanard, Appellant.

574

Argued March 11, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER and JAMES, JJ.

*George H. Detweiler,* for appellant.

*Lawrence Potamkin,* with him *Peter P. Zion,* for appellee.

OPINION BY STADTFELD, J., April 16, 1937:
This is an appeal by defendant from a judgment

entered against him in an action of assumpsit in a case tried by a judge without a jury in the Municipal Court of the County of Philadelphia.

The facts are set forth in the opinion of the trial judge, WALSH, from which we quote: "In March of 1925, the plaintiff was a director and stockholder of the Pilgrim Title and Trust Company, a banking institution of the City of Philadelphia. The defendant, then and now a member of the Philadelphia Bar, was likewise a director and stockholder of that bank, as well as counsel for it. The defendant claims not to have been a director, but, although the point is not of great moment, the evidence clearly establishes that he was.

"At that time, the Pilgrim Title and Trust Company was a creditor of one Brown and Stevens, then in receivership, to the extent of approximately Thirty-three Thousand Dollars ($33,000.00). One item of this indebtedness was a note of Brown and Stevens for Fifteen Thousand Dollars ($15,000.00), for which two certificates of deposit of the Cosmopolitan State Bank in said amount had been given as collateral security. The Cosmopolitan State Bank was also in the hands of a receiver, and the defendant had filed a claim for the Pilgrim Title and Trust Company, based upon the certificates of deposit. It is with the dividends paid upon this claim that this suit concerns itself.

"For some reason not divulged and not relevant hereto, there was no record of these certificates of deposit on the books of the Cosmopolitan State Bank. Consequently, the State Banking Department, when examining the books of the Pilgrim Title and Trust Company, classified not only the Brown and Stevens principal obligations a loss, but the collateral as well. It therefore ordered that this threatened impairment of the Pilgrim's capital structure in the sum of Thirty-three Thousand Dollars ($33,000.00) be remedied by a contribution in like amount.

"The directors then sought to raise this sum among themselves. Naturally, there were many objections. However, they were advised by the defendant, and correctly so, that those who contributed would thereby become entitled to whatever was realized from the Brown and Stevens' obligation and its collateral, and this understanding was reduced to writing. (This writing had disappeared at the time of the hearing). Relying upon this understanding among them and this assurance by the defendant, various directors made contributions. The plaintiff contributed One Thousand Eight Hundred Dollars ($1800.00), or 5.455% of the total contributions. The protection of the contributors' interests and the collection of the collateral was left entirely with the defendant.

"Thereafter, the Pilgrim sold most of its assets to the William Penn Title and Trust Company which in turn sold to the Plaza Trust Company, but the Brown and Stevens' obligations and its collateral constituted no part of the transferred obligations. Trustees were chosen by the Pilgrim stockholders to attend to the liquidation of those assets retained by them and the defendant herein was retained as counsel for the trustees at a yearly retainer of Two Thousand Dollars ($2,000.00).

"The defendant received a dividend in the sum of Five Thousand Four Hundred Dollars ($5400.00) from the Cosmopolitan State Bank on April 5, 1927; another in the sum of Four Thousand Nine Hundred Fifty Dollars ($4950.00) on March 3, 1930; and a third dividend in the sum of Six Hundred Seventy-five Dollars ($675.00) was paid on May 31, 1934, directly to the Plaza Trust Company.

"The first dividend of Five Thousand Four Hundred Dollars ($5400.00) was retained by the defendant and was never remitted by him to anyone. The second dividend of Four Thousand Nine Hundred Fifty

Dollars ($4950.00) was turned over by him to the Plaza Trust Company and One Thousand Five Hundred Dollars ($1500.00) thereof was paid to the defendant as fee. The books of the Plaza Trust Company show this as to the second dividend. No entry whatsoever appears as to the first dividend.

"The plaintiff, together with his witnesses, Lieberman and Bertolet, who were likewise directors, stockholders and contributors, continuously inquired of the defendant regarding the status of the claim. They were as often advised that it was pending. Not until the year 1932, when an item regarding the Cosmopolitan State Bank appeared in the newspapers and aroused their suspicions, did the plaintiff or his witnesses have any cause to suspect that the claim was beyond the 'pending' stage. An investigation of records then followed, which disclosed the payment to the defendant of the first two dividends."

It is for the proportionate share of the dividends that plaintiff brought this action to recover for the loss sustained by him as the result of improper legal representation by his counsel, the defendant.

The only assignments of error which are necessary to discuss relate to the entry of judgment for plaintiff, the dismissal of defendant's motion for judgment n. o. v., and the refusal of motion for new trial.

A careful examination of the entire record convinces us that the testimony fully supports the judgment of the lower court.

As stated in *Deacon, appellant, v. Hendricks,* 66 Pa. Superior Ct. 36, 37: ...... 'The general finding was responsive to the issue presented by the pleadings, and as the issue was one of fact depending for its determination on oral testimony, the finding as perfectly supported the judgment entered thereon, as would the general verdict of a jury upon the same issue ...... Where an issue of fact depends on oral testimony, it is

the province of the jury, if the case be tried before a jury, or of the court, if the case be tried by the court without a jury, to decide.' "

The basis of plaintiff's claim is that he employed appellant as counsel, to protect and recover upon the plaintiff's interest in certain certificates of deposit; that the plaintiff was the equitable owner of part of said certificates, and as such was entitled to receive part of the moneys paid thereon; that the defendant had received from the Secretary of Banking in possession of the Cosmopolitan State Bank of Philadelphia, dividends upon the said certificates of deposit; that the moneys paid upon these certificates were not received by the plaintiff, although collected by the defendant.

The first two dividend checks, one in the sum of $5,400 and the other in the sum of $4,950, were received by defendant personally. The third or final dividend check in the sum of $675 was made payable to the order of Receiver of Plaza Trust Company, successor to Pilgrim Title and Trust Co., either with defendant's consent, or as a result of his negligence.

As stated by the lower court, the first dividend of $5,400 was retained by the defendant and was never remitted by him to any one. The second dividend, of $4,950 was turned over by him to the Plaza Trust Company, and $1,500 thereof was paid to the defendant as fee.

Although defendant testified that the Pilgrim Title and Trust Co. had sold all of its assets to the William Penn Trust Co. in 1926, he thereafter represented trustees for stockholders of the Pilgrim Title and Trust Co. at an agreed annual retainer of $2,000, in the collection of assets retained by them. He rendered written reports concerning the status of these collections, and one such report, bearing date of December 3, 1928, offered in evidence, contains a statement that Brown and Stevens' claim could be marked off as a

total loss. Yet the claim against the Cosmopolitan State Bank was part of the Brown and Stevens' collateral, and the defendant had in his possession since April 5, 1927, $5,400 which he had received in dividends upon this claim, and which he at no time reported.

Appellant contended at the hearing that he retained this dividend because he was instructed so to do by the William Penn Trust Co. as a fee for services rendered to that company. He personally knew that the William Penn Trust Co. had not acquired the Brown and Stevens' claim in the purchase of the assets from the Pilgrim Title and Trust Co., and that it had therefore no right to direct the application of the dividend thereon as appellant claimed.

Quoting from the opinion of the lower court: "The testimony of the plaintiff and his witnesses was clear, logical and convincing. That of the defendant was vague and somewhat confused, and contained unbelievable explanations. ...... It would be superfluous to here enumerate the abundance of facts which support the existence of a contract regarding the liquidation of the collateral between the defendant and the contributing directors. Suffice it to say that their contributions were made in reliance upon his legal advice, as he intended they should be, and he was entrusted with the protection of their rights. He continued to advise regarding them." Appellant showed an utter disregard and misconception of his duties as counsel for plaintiff and the other contributing directors.

As stated in 6 Corpus Juris 630, Sec. 124: "The contract of employment, as in other cases, consists of a mere offer or request by the client and an acceptance or assent by the attorney. An acceptance of the relation is always implied on the part of the attorney from his acting in behalf of his client in pursuance of a request ......" Also at p. 682, Sec. 206: "It is the duty of

an attorney to bring to the conduct of his client's business, the ordinary legal knowledge and skill common to members of the legal profession; to act toward his client with the most scrupulous good faith and fidelity; and to exercise in the course of his employment, that reasonable care and diligence which is usually exercised by lawyers. He is not bound to possess or exercise the highest degree of skill, care, and diligence; nor is he an insurer or guarantor of the results of his work. For the consequences of a failure to perform these duties an attorney is generally liable to his client."

In the language of the learned trial judge: "When the plaintiff and other directors made their contributions to the Pilgrim Title and Trust Company, they became the owners of the Brown and Stevens' obligations. Such a payment to the holder by third persons is prima facie a purchase of the obligations: 8 C. J. 588, Sec. 826-G; *Brown v. Marmaduke,* 248 Pa. 247, 250. In the instant case, however, it was more than merely prima facie a purchase; there was an actual agreement regarding same, between the bank acting through its directors and the contributing directors.

"And by the purchase of the principal obligations, the contributing directors became the equitable owners of the collateral pledged therefor: 49 C. J. 464, Sec. 158; *Painter v. Harding,* 3 Phila. Reports 449. All that remained was for the defendant, in whose trained legal hands the matter was entrusted, to accomplish the transfer of legal title. This he did not do. He has cited his failure to do so as refutation of his duty to do so. However, as stated in the plaintiff's brief, this failure makes his faults greater rather than less.

"The fact that the contributing directors received no part of the dividends paid upon the claim against the Cosmopolitan State Bank is admitted by the defendant. In view, therefore, of the foregoing, in view of the fact that the contributors were clearly entitled to those divi-

dends and that the defendant, their counsel, failed to obtain those dividends for them, as he plainly could and should have done, he is liable to each for the loss he has caused him. That the defendant did not cause the claim against the Cosmopolitan State Bank to be marked to the use of the contributors, that he thereafter distributed the first dividends to no one, the second to the Plaza Company and allowed the third to be paid directly to the Plaza Trust Company, is his doing and his alone. The liability for his so doing is therefore likewise his."

The case was correctly decided by the lower court and nothing can profitably be added to the opinion filed by it.

The assignments of error are overruled and judgment affirmed.