Bertolet *v.* Lanard, Appellant.
Lieberman, to use, *v.* Lanard, Appellant.

Argued November 9, 1943.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*George H. Detweiler,* for appellant.

*Peter P. Zion,* for appellees.

OPINION BY STADTFELD, J., March 1, 1943:

The plaintiff, William H. Bertolet, Jr. (in his own
right and as assignee of George B. Lieberman) brought
actions in assumpsit against the defendant that were
identical in all details except the amount of moneys
which each had contributed to a certain pool of $33,-
405.40 and their proportionate right or share in the
recovery. The two cases were tried together before
Judge GLASS and a jury. The jury found for the de-
fendant. Motions for a new trial and judgment n.o.v.
were filed. The motion for a new trial was granted by
a divided court, Judge GLASS, trial Judge, dissenting.
It is from the granting of this motion for a new trial
that the defendant appellant has filed his appeal.

The plaintiffs' pleadings and evidence set forth that
they were formerly directors and stockholders of Pil-
grim Title and Trust Company; that defendant, a mem-
ber of the Philadelphia Bar, was likewise a director and
stockholder of that bank, and also counsel for the
bank; that they, together with other contributors, em-
ployed Lanard as counsel to protect and recover upon
their interests in certain certificates of deposit which

formed part of collateral securing a loan made by the Pilgrim Bank to one Brown and Stevens; that each of the plaintiffs, by his contribution, was the equitable owner of part of said certificates, and as such, entitled to receive his proportionate part of the moneys recovered thereon; that the defendant had received from the Secretary of Banking, in possession of the Cosmopolitan State Bank of Philadelphia, dividends upon the certificates of deposit; that in July of 1932, plaintiffs learned that the defendant had received a dividend of $4,950 on or about March 7, 1930; in September of 1932, they demanded of the defendant their proportionate share of such dividend, but defendant refused to pay. On or about December of 1934, plaintiffs learned that defendant had received an earlier dividend of $5,400 on or about March 2, 1927. They thereupon made demand upon the defendant for payment of their proportionate share of the total dividends paid, which was in an amount of $11,025, which defendant refused to pay.

On December 17, 1924, a loan was granted by Pilgrim to one Brown and Stevens, private bankers, in the amount of approximately $33,000. This was made up of several smaller loans. One of the loans was in the amount of $15,000. This was evidenced by a note in that amount, for which the bank held as collateral security two certificates of deposit with the Cosmopolitan State Bank in the sum of $10,000 and $5,000 respectively. In addition to this loan there were certain overdrafts charged to Brown and Stevens.

Plaintiffs aver a report of the Banking Department, as a result of an examination of the affairs of Pilgrim as of February 11, 1925, showed an impairment of capital of that bank in the amount of $33,405.40 because of the loan to the aforesaid Brown and Stevens.

The Banking Department refused to grant any value to the principal obligation of Brown and Stevens

40

or to the certificates of deposit in question. It requested that the threatened impairment of $33,405.40 of the capital stock of Pilgrim be protected by a contribution of a like amount.

Lanard's advice was sought by the directors, including these plaintiffs Plaintiffs alleged that the defendant advised that those directors who contributed to this fund would receive whatever was obtained from the Brown and Stevens loan or from the collateral, and at the most the directors would lose but half of their contribution. Plaintiffs relied upon the statement and representation of the defendant as counsel and made their contributions to the fund; that equitable title to their proportionate share of the certificates of deposit thereupon passed to them because of their contributions; that defendant acted as counsel for the plaintiffs and other contributors to the said fund and undertook to collect any moneys that might be payable because of the certificates of deposit.

Thereafter, in October of 1926, Pilgrim sold most of its assets to the William Penn Title and Trust Company; the certificates of deposit were not part of the assets of Pilgrim and were not sold to William Penn Title and Trust Company. The purchaser (William Penn) rejected the Brown and Stevens loan. (This loan, at that time, was carried on the books of Pilgrim in the amount of $8,422.70, being the balance of the Brown and Stevens loans and other drafts after setting off a $33,000 certificate of deposit issued to Brown and Stevens by Pilgrim.) This set-off was on the advice of the defendant.

Trustees for stockholders were appointed to liquidate those assets which were retained by Pilgrim. The trustees were plaintiffs Lieberman and Bertolet, the witness Levene and one Branagan. Defendant was retained as counsel for the trustees at an annual retainer of $2,000. All the contributors to the pool in question

were also stockholders. On December 3, 1928, the defendant made a report concerning various items which had not been purchased by William Penn, including the Brown and Stevens account, addressed to the trustees for stockholders, in which he stated that that item could be marked off as a total loss. (On March 2, 1927, he had received the first dividend of $5,400 because of the certificates of deposit in question.) Defendant did not report the collection of this dividend to the contributors or to anyone else. In March of 1930, defendant received the second dividend of $4,950. At that time he made an arrangement with the Plaza Trust Company (successor to William Penn) that he be paid a fee of $1,500 out of the second dividend, which he received. At that time he reported to Plaza for the first time that he had received the first dividend of $5,400 and retained it for himself.

Defendant denied, in his affidavit of defense and throughout the trial, that he represented the contributors to the pool in any capacity, specifically that he did not represent them, including the plaintiffs, in an effort to collect anything because of the contributions they had made to the pool of $33,405.40. He denied that the plaintiff had any interest in the certificates of deposit in question.

Although Lanard, by his affidavits of defense and his testimony in the instant cases and the Levene case, denied that he represented the contributors in the pool, he wrote a letter on December 2, 1927, addressed to Marshall A. Coyne, Esq. In that letter, defendant, in three places, described himself as counsel for the contributors, identifying the matter sufficiently so that there could be no doubt as to its meaning.

The trial judge, in reviewing the plaintiff's testimony, made no reference to this letter. This, although at the end of his charge to the jury, the plaintiffs called the trial judge's attention to that fact and asked

that he make mention of it to the jury. This he did not do, to which plaintiffs took exception.

An earlier suit had been brought by one Levene against present defendant. That suit was based upon the identical set of facts as the instant cases. Levene was likewise a director of Pilgrim and a contributor to the pool. He had obtained a judgment in the lower court against the defendant in his suit. That judgment was duly affirmed by this court as reported at 126 Pa. Superior Ct. 573, 191 A. 219, and thereafter by the Supreme Court of this State, as reported at 329 Pa. 240, 198 A. 4. Plaintiffs, in the instant cases, pleaded that the facts and the issues set forth in the pleadings between the plaintiff and the defendant are res adjudicata, setting forth the *Levene v. Lanard* verdict and judgment. Thereafter, the plaintiffs moved for judgment on the pleadings. The lower court entered judgment on the pleadings in those cases, from which judgment defendant appealed to this court. The lower court was reversed on the ground that the *Levene v. Lanard* decision was not res adjudicata of the instant cases and ordered the case to be returned with a procedendo at 135 Pa. Superior Ct. 245, 5 A. 2d 441.

Fifteen trial days were consumed in the trial of the instant cases. The jury returned its verdict in favor of the defendant within half an hour.

Defendant appealed from the order granting a new trial.

Before discussing the questions involved in this appeal it will be well to consider our powers and duties in relation to an appeal from an order granting a new trial.

We quote from the opinion of the Supreme Court in the case of *Frank, Admr. v. Bayuk,* 322 Pa. 282, 185 A. 705: "This is an appeal from an order granting a new trial. An award of a retrial is an inherent power of the court of common pleas and entirely discretionary:

...... Such order will not be reversed unless there is clear error of law or palpable abuse of discretion: ...... The court believed justice necessitated another trial. The reasons assigned were not erroneous as a matter of law, and involved a proper exercise of discretion. *Even if the verdict should appear correct to us, we will not reverse unless the court below commits manifest error in awarding a new trial. There are many incidents of a trial including the manner of its conduct, which a judge may feel are productive of prejudice.*" (Italics supplied.)

The court below by action of the majority members of the court en banc granted the plaintiff a new trial. In the opinion of the court below the reason for the granting of a new trial is set forth in one sentence: *"In the instant case it is believed justice necessitated another trial."* (Italics supplied)

In the case of *Class & Nachod Brewing Co., Appellants, v. Giacobello*, 277 Pa. 530, 121 A. 333, the Supreme Court, in a very comprehensive opinion by the late Mr. Chief Justice MOSCHZISKER, has reviewed the cases in which the Supreme Court will reverse an order granting a new trial. We quote from that opinion as follows: "...... This court will not review an order granting a new trial, unless the whole controversy may be ended by a determination of the constitutionality, applicability, construction or effect of a statute, or other matter of writing, which, so far as the case in hand is concerned, could not possibly be controlled or affected by evidence aliunde the writing itself, and in such instances the record must not only plainly show the point in question but its governing force; or, unless it clearly appears the court below, in ordering the new trial, either asserted a power which, under the attending circumstances, it did not possess or its action was controlled by a point of law, the decision of which, one way or the other, would govern the case, to

the exclusion of all other considerations; or, unless the court states it would have refused to grant the new trial but for reasons distinctly set forth, which, in its opinion, control the whole case, and then we will review the reasons given only when they do not involve the consideration of oral evidence further than as noted in the preceding paragraph; finally, whenever the reason or reasons assigned involve the exercise of discretion, the order of the trial court will not be interfered with unless a palpable abuse of power appears."

There is nothing by way of certificate or otherwise to indicate that the order granting the new trial in the instant case is based upon a single point, decision of which, one way or the other, would govern the case to the exclusion of all other consideration.

In *Straus v. Rahn*, 319 Pa. 93, 179 A. 445, on page 98, quoting from *Class & Nachod Brewing Co. v. Giacobello*, supra, the court stated: "...... and before we will proceed to a review, it must appear that testimony is not to be passed upon by us ...... unless purely as to its legal effect in some isolated and all-controlling particular wherein its verity is admitted ......

"Experience has established the wisdom of these conclusions; and hence we have repeatedly required appellant, in this class of cases, where the record presented to us did not with certainty base the decision of the court below upon such a single point, to obtain from the trial judge and file in this court a certificate expressly stating that, but for this one point, he would not have granted a new trial, as a condition precedent to even an argument of such an assignment of error here."

To the same effect see *Feite v. Goll, Exrx., Appellant*, 285 Pa. 151, 131 A. 726; *Straus v. Rahn*, 319 Pa. 93, 179 A. 445.

Plaintiffs' claim according to the statements filed

predicated a right to recover against the defendant on two grounds: (1) The engagement of defendant's services by plaintiffs as counsel in the matter of the recovery on their behalf on the certificates of deposit referred to supra, and (2) that by reason of their contribution to the fund to make good the impairment of the assets of the Pilgrim Title & Trust Co., they became the equitable owners of interests in said certificates of deposit, on which defendant received dividends to which plaintiffs were entitled and for which defendant failed to account. Defendant as stated, supra, denied his employment by plaintiffs, as also their interests in the certificates.

After trial on the completion of the charge of the trial judge, the plaintiffs called the court's attention to the fact that there had been introduced into evidence a letter written by this defendant to Marshall Coyne, Esq., dated December 2, 1927, which appellant omits from the record but refers to it where it appears in the evidence, and which is plaintiff's Exhibit No. 34 and which is Reason No. 142 in support of the motion for a new trial, in which the defendant had *described himself as counsel for the contributors in three different places.* Plaintiffs asked that the court note to the jury that this letter written by the defendant was introduced in evidence by the plaintiffs to support their contention that he had been engaged by them with others to represent them and that he had so acted. This the court refused to do and granted an exception.

Throughout the cross-examination of the defendant, he maintained that he had never represented the plaintiffs or contributors to the fund as such in the subject matter involved in the instant case. The letter inter alia reads: "...... There is another matter which should be determined at this time and in which one of your clients has an interest. Without going into the details of the origin of the trouble, it is sufficient to

say that the Pilgrim Title and Trust Company issued what has been called a Certificate of Deposit to the order of Brown and Stevens in the sum of $33,000. The Banking Department compelled the Board of Directors to create a fund which was carried on the books of the Pilgrim as a special reserve, and appears on the memorandum of November 10th, of which you have a copy, as part of Item C, which is there entered as $44,939.70. Later, on examinations by the Banking Department, they claimed that Pilgrim was holding certain notes which they refused to give any appraised value, and compelled the Directors to post in the reserve fund sums sufficient to equal the face of these notes in case the notes should later be determined as a total loss. The fund as it stood at the time that the William Penn entered into the agreement, and also on November 10th, appears as I have stated before, as Item C, reserve fund, $44,949.70. *This entire amount was contributed by the Board of Directors and in no way came from any assets or funds belonging to the Pilgrim.* So that there may be no misunderstanding or dispute regarding this reserve fund, I feel that the William Penn should at this time in some way by writing give *to me as counsel for the contributors* the assurances.

"First: That when it is determined that there is no liability on the so-called $33,000 Certificate of Deposit, then in that event the William Penn will pay *to me as counsel for the contributors the $33,000 plus* ......

"Second: That if any of the notes which are represented by the remaining portion of the reserve fund, the identity of which can later be established, should be collected in full or in part, then so much as may be recovered on account of these notes shall be released from the reserve and paid *to me as counsel for the contributors, plus* ......" (Italics supplied.)

Certainly, it was evidence to be considered by the jury on that question. Certainly, the jury was not

properly instructed when the trial judge, in referring to the evidence presented by the plaintiff to support their contention of the employment of the defendant by them refers only to the oral testimony of the plaintiff Bertolet and the witnesses, Lieberman and Levene, and when his attention is called to his failure to refer to the defendant's letter, he does not do so.

As was said in *Herrington v. Guernsey Bros.*, 177 Pa. 175, 35 A. 603: "We think that the court, having referred in its charge to a part of the evidence affecting the issue concerning the agreement, should have directed the attention of the jury to all the evidence and circumstances affecting it, and that its failure to do so was prejudicial to the defendants' cause. We have already mentioned some of the omitted matters and to these we may add the obvious inadequacy of the reference in the charge to the testimony of Miss Mills."

We are of the opinion that there is nothing in the record which warrants a reversal of the order granting a new trial.

Order affirmed.