J-S95008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARIUS HARGROVE | |
| Appellant | No. 2218 EDA 2015 |

Appeal from the Judgment of Sentence July 1, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0009618-2014

BEFORE:  STABILE, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 21, 2017**

Appellant, Darius Hargrove, appeals from the July 1, 2015 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court") following his convictions of aggravated assault,[1] possessing instruments of crime ("PIC"), and recklessly endangering another person ("REAP").[2]  Appellant is challenging the sufficiency of the evidence and raising a self-defense claim.  Upon review, we affirm.

Following an incident on June 25, 2014, wherein Appellant attacked ninety-year-old Robert Mack ("Mack") at his residence, Appellant was

_____

[1] Appellant was convicted of two different types of aggravated assault; however, they merged at sentencing.

[2] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), 907, and 2705 respectively.

charged with aggravated assault, PIC, REAP, and simple assault. Following a jury trial from February 12-17, 2015, Appellant was convicted on all charges, save for simple assault, which was withdrawn. The trial court sentenced Appellant on June 26, 2015, to an aggregate of 3-10 years' state incarceration followed by 17 years of county reporting probation. On July 1, 2015, the trial court vacated the sentence for REAP, and Appellant's period of probation was reduced to 15 years. Appellant did not file any additional post-sentence motions.

Appellant filed a timely notice of appeal on July 22, 2015. The trial court directed compliance with Pa.R.A.P. 1925(b) on September 15, 2015. The trial court permitted Appellant's trial counsel to withdraw on October 1, 2015, and on October 13, 2015, granted Appellant leave to file his concise statement by November 5, 2015. After two additional extensions, Appellant filed his concise statement on December 12, 2015. The trial court issued a 1925(a) opinion on July 6, 2016.

Appellant raises two questions on appeal, which we quote verbatim.

I.   Should the verdict be reversed and should [Appellant] be discharged because [Appellant] acted in self-defense, the Complainant was the aggressor, and the Commonwealth failed to disprove self-defense beyond a reasonable doubt.

II.  Should the verdict be reversed and [Appellant] discharged because the Commonwealth failed to prove the offenses by sufficient evidence.

Appellant's Brief at 4.

Both of Appellant's arguments are challenges to the sufficiency of the evidence. Our standard of review for sufficiency claims is well established.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mauz*, 122 A.3d 1039, 1040-41 (Pa. Super. 2015) (quoting *Commonwealth v. Rahman*, 75 A.3d 497, 500-501 (Pa. Super. 2013)). However, in order to address a challenge to the sufficiency of the evidence, it must be preserved for appeal. *See Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015).

If [a]ppellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the elements or elements on appeal. [Where a] 1925(b) statement [] does not specify the allegedly unproven elements[,] . . . the sufficiency issue is waived [on appeal].

*Id.* (quoting *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) (quoting *Commonwealth v. Flores*, 921 A.2d 517, 522-523 (Pa. Super. 2007))).

In the matter *sub judice*, Appellant's 1925(b) statement failed to specify the element or elements upon which the evidence was insufficient.

Therefore, Appellant's claims are waived. Moreover Appellant's questions presented fail to identify the elements or elements upon which the evidence was insufficient. *See* Appellant's Brief at 4. Accordingly, we conclude Appellant's claims were not adequately preserved for appellate review and are waived. *See Tyack*, 128 A.3d at 260. Even if Appellant's claims were not waived, the trial court's July 6, 2016 opinion adequately addresses the merits of Appellant's claims. *See* Trial Court Opinion, 7/6/2016, at 7-17.

Furthermore, insofar as Appellant's self-defense argument is a challenge to the weight of the evidence, the claim cannot be raised for the first time on appeal. *See Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012); Pa.R.Crim.P. 607. "A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver, even if the trial court address the issue in its opinion." *Lofton*, 57 A.3d at 1273 (citations omitted). Appellant failed to challenge the weight of the evidence prior to this instant appeal; therefore, Appellant's challenge to the weight of the evidence is waived.

In conclusion, we find that Appellant's claims are waived, and lack merit. Therefore we affirm the judgment of sentence. We direct that a copy of the trial court's July 6, 2016 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

- 4 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/21/2017

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )  PHILADELPHIA COUNTY
)  COURT OF COMMON PLEAS
)
VS. )
)  NO. CP-51-CR-0009618-2014
)
)
DARIUS HARGROVE )
)
_____ )

FILED
JUL 06 2016

OPINION

Criminal Appeals Unit
First Judicial District of PA

PROCEDURAL HISTORY

Appellant, Darius Hargrove, as the above-named Defendant, seeks review of the Order and

Judgment of Sentence imposed on June 26, 2015 by the Honorable Anne Marie B. Coyle, Judge

of the First Judicial District Court of Common Pleas. The Appellant asserts within the Defendant's

Statement of Matters Complained Of On Appeal Pursuant to Pa. R. P. 1925(b) that there was

insufficient evidence to support the guilty verdicts entered following a jury trial on February 17,

2015.

The underlying case stems from the arrest of Darius Hargrove on June 25, 2014 at 10:30

p.m. for violently assaulting ninety year old Robert Mack within the foyer and down the front

concrete steps of the victim's residence located in the 1700 block of Bambrey Street, Philadelphia,

PA. The resulting charges included §2702 §§A1-Aggravated Assault, Felony of the First Degree;

§2702 §§A6-Aggravated Assault-With Deadly Weapon, Felony of the Second Degree; §907 §§A

Possessing Instrument of Crime, Misdemeanor of the First Degree; §2701 §§A Simple Assault,

1

APPENDIX B

Misdemeanor of the Second Degree; and, §2705 Recklessly Endangering Another Person, Misdemeanor of the Second Degree.

Following arraignment, preliminary hearing and filing of Bills Of Information, the Defendant's case was schedule for jury trial before the Honorable Anne Marie B. Coyle Judge of the Court of Common Pleas for the First Judicial District. On February 17, after a full and fair three-day jury trial, the jury found the Defendant guilty of Aggravated Assault F1, Aggravated Assault F2; Possessing Instrument of Crime M1, and Recklessly Endangering Another Person M2. On June 26, 2015 this Court imposed the following sentence:

Count 1: 18 Pa.C.S.A. § 2702 §§A1- Aggravated Assault (F1): State term of confinement for a minimum of 3 years to maximum 10 years followed by ten years of County regular reporting probation; and

Count 2: 18 Pa.C.S.A. § 907§§A-Possession Instrument of Crime (M1): Term of five years of County regular reporting probation to run consecutively to Count 1 period of probation; and

Count 4: 18 Pa.C.S.A. § 2705-Recklessly Endangering Another Person (M2): Term of two years of County regular reporting probation to run consecutively to Count 2 period of probation; and

Count 5: 18 Pa.C.S.A. § 2702 §§A6- Aggravated Assault (F2): No further penalty due to merger with Count 1;

2

On July 1, 2015, the penalty for Recklessly Endangering Another Person was vacated, and the original sentence for all other charges remained the same. Thus, the aggregate sentence for all offenses was a period of state confinement from a minimum of 3 years to a maximum of 10 years followed by 15 years of reporting probation to be supervised by the County of Philadelphia Probation Department Drug and Alcohol Unit. This Court imposed conditions including random drug and alcohol screening, random home checks, and directed the Defendant to have zero contact with the victim and pay mandatory fines and costs.

The Defendant was directed to perform 100 hours of community service each year under supervision, and a minimum of 50 hours of anger management counseling as directed by the Philadelphia Probation Department. He was further directed to obtain and maintain legitimate employment upon release. This Court permitted the Defendant to be credited for custodial time served as calculated by the Philadelphia Prison System, and determined the Defendant to be ineligible for early release programs including Boot Camp. The remaining charges were Nolle Prossed.

On July 22, 2015, the Defendant filed a timely Notice of Appeal. The Order in accordance with Pennsylvania Rule of Appellate Procedure 1925(b) was filed on September 15, 2015. After trial counsel was permitted to withdraw on the record, an Amended 1925(b) was filed on October 1, 2015. A Statement of Matters Complain of on Appeal was filed by the Defendant, through newly appointed counsel Aaron Finestone, Esquire, on December 12, 2015.

In summary, the Defendant asserted within the Statement of Matters Complained of on Appeal:

1. There is insufficient evidence to support the guilty verdicts for Aggravated Assault, Possessing Instrument of Crime, and Recklessly Endangering Another Person;
2. Alternatively, the Defendant successfully established the affirmative justification of self-defense;

3

3. Defendant should be granted a new trial because the Honorable Court erred in sustaining the Commonwealth's objecting to the following question posed by defense counsel: "And in all your time visiting your friend that lives there, have you ever witnessed any altercation between you or anyone else and Mr. Mack?"

## FACTUAL HISTORY

At trial, the Commonwealth of Pennsylvania established that on June 25, 2014, at or about 10:30 p.m., City of Philadelphia Police Officers Whittaker and Gibson, while driving in a marked patrol car and dressed in full uniform, were dispatched by police radio to the location of 1744 Bambrey Street, Philadelphia, PA. (N.T. 2/12/2015, p. 89). The radio call was for a person screaming and 90 year-old male was bleeding from the head. *Id.* At this location, officers observed a pools of blood on the sidewalk and steps in front of the property, which was determined to be the victim's residence.

Upon arrival, eyewitness Michelle Grant, a neighbor of the victim, invited the officers into Mr. Mack's home. Officer Whittaker entered the kitchen and observed the elderly victim, Robert Mack, bleeding heavily from the back of his head and in extreme distress. They also observed wounds to Mr. Mack's chin and above his left eye. Robert Mack explained to Officer Whittaker that his neighbor Darius Hargrove fought with him. Both Michelle Grant and Mr. Mack gave a description of the Defendant as a black male wearing white T-shirt with an American flag, and jean shorts.

As Officer Whittaker then stepped outside to locate his brother officer, he observed Officer Gibson speaking to a black male in a white American flag t-shirt, and jean shorts. Robert Mack positively identified the Defendant as the person who harmed him. (N.T. 2/12/2015, pp. 89-93). In the process of securing and arresting the Defendant, Officer Gibson testified that he observed no injuries to the Defendant. (N.T. 2/12/2015, p. 93).

4

Despite his advancing age, Robert Mack corroborated Officer Whittaker's version of events. At trial, Mr. Mack testified that as he was standing on his doorstep of his home, that he had owned for 68 years with his wife who was then hospitalized and had died within days of the instant assault. He noticed that it was getting late and dark. He told a group of children who had been running and playing loudly outside his residence between the cars to go home. He further explained that these children were from down the street and frequently ran around late into night playing in the street in front of his house. Mr. Mack stated that on the night in question, June 25, 2014, these children, which included the Defendant's children, became disrespectful and disregarded his instructions to leave. He became agitated and repeatedly told them "It's time for you to go home." (N.T. 2/12/2015, p. 43)

Shortly thereafter, the Defendant angrily stormed up the street from his residence and ran directly to Mr. Mack's home. The Defendant ranted and yelled at Mr. Mack that "his kids can play anywhere they want to." Mr. Mack and the Defendant engaged in a heated verbal exchange. The Defendant then ran into Mr. Mack's front doorway and foyer uninvited and refused to leave. After Mr. Mack told the Defendant to go away, the Defendant repeatedly struck Mr. Mack over the head with Mr. Mack's cane and pulled him down the steps in front of his home. (N.T. 2/12/2015, pp. 39-49). Mr. Mack remembered being dragged down the street by the Defendant and that his "beautiful home" was "all bloody." He reported that some of the neighbor ladies took care of him before he was transported to the hospital emergency room.

Mr. Mack's next door neighbor, Michelle Grant reported that, as the argument was unfolding, she was working in her living room. At trial, Ms. Grant testified she heard the Defendant's children loudly running around and playing up and down the street and directly in front of Mr. Mack's house. She further explained that she then heard Mr. Mack yell in a louder

5

than his normal voice tone. Ms. Grant peeked out her window and observed "the Defendant having Mr. Mack gripped up, and Mr. Mack struggling to stand up and his shoes had been kicked off." She saw Mr. Mack struggle to stay upright as the Defendant tried to throw Mr. Mack downward. She saw that Mr. Mack's feet had been pulled from his shoes and that Mr. Mack was bleeding profusely.

As Ms. Grant ran to assist Robert Mack, she exclaimed for someone to call the police. Ms. Grant also recalled that a second neighbor, Rachel Parish, was also present attempting to help Mr. Mack. She heard Rachel Parish pleading, "Darius, let him go. Let him go, Darius. Let him go." Ms. Grant described Mr. Mack's appearance as shaken and disheveled with his shoes removed, and suffering from a large bleeding gash to his head. The blood from his face had poured onto the sidewalk into his front foyer. Both Ms. Grant and Ms. Parish took the victim inside his residence to help him clean up the blood until the ambulance arrived. (N.T. 2/12/2015, pp. 69-73).

Ms. Grant also remembered that she and other neighbors had frequent difficulties with the Defendant and his wife because "the Defendant and his family always kind of congregate outside. They always had a lot of people from other neighborhoods, and they always play in the street." (N.T. 2/12/2015, p. 83) She testified that she had one previous altercation with the Defendant and his wife because she had parked in a legitimate parking spot in front of her house which interrupted the Defendant's children from playing in the street. She described how they confronted her at her home. "They all ganged up at my house, kicking at my door, just harassing me and being irate about the fact that his kids should be allowed to play on the block." (N.T. 2/12/2015, pp. 83-84).

6

Immediately following the attack, Robert Mack was transported by ambulance to Hahnemann Hospital in the city and county of Philadelphia for emergency treatment of his wounds, particularly addressing the large gash to his head. Detective Stephanie Flanders photographed the multiple observable injuries to Robert Mack's face and head in the emergency room.

Once the Defendant was arrested, he was transported for processing within the City of Philadelphia Police Detention Unit located at 8th & Race Street, Philadelphia, PA. (N.T. 2/12/2015, p. 117). Within this processing unit, Philadelphia Correctional Officer Stacy Hudson utilized a questionnaire form to gather medical and biographical information from the Defendant. During this inquiry, the Defendant did not complain of any injuries, nor did Officer Hudson observe any lacerations or bruising on the Defendant. After this process, the Defendant was released because the Philadelphia District Attorney's Office declined to press charges based upon limited information provided. (N.T. 2/12/2015, pp. 107-110). Detective Stephanie Flanders testified that once additional information was gathered, she prepared a more detailed arrest warrant in August which was approved. (N.T. 2/12/2015, p. 146).

DISCUSSION

In his Statement of Errors, the Defendant asserts that insufficient evidence existed at trial to convict him of aggravated assault, reckless endangerment, and possession of an instrument of crime. Alternatively, the Defendant avers that witnesses called on his behalf established his affirmative justification self-defense. He further claims he should be acquitted on all charges because defense witnesses established Robert Mack was the aggressor in this minor "tussle," and that the Defendant acted in self-defense. The totality of the evidence presented supported the

7

jury's assessment of the weight and credibility of testimony which rejected the Defendant's proffered self-defense justification theory.

The evidence introduced at trial clearly demonstrated that Defendant, who is a healthy and strong forty year old man was the physical aggressor. The Defendant was infuriated because Robert Mack, a frail ninety year old man, committed the unpardonable sin of reprimanding the Defendant's unruly and disrespectful children. The Defendant angrily stormed down the street and charged into the foyer of Mr. Mack's home. When Mr. Mack demanded that the Defendant leave his foyer, the Defendant grabbed Mr. Mack's cane and purposefully and forcefully struck him over the head, pulled him from his foyer and down a flight of concrete steps leading to the sidewalk. Mr. Mack hung onto one side of his cane for dear life.

The victim Robert Mack suffered serious bodily injury in the form of profusely bleeding gash to the top of his head and additional cuts about his face when the Defendant struck him repeatedly with a long wooden cane and pulled him down a flight of concrete steps. The level of force exerted upon Mr. Mack was so strong that he was pulled form his own shoes as he struggled to remain upright. To add insult to injury, the instrument that the Defendant deliberately used to inflict seriously harm to his frail elderly victim was the long wooden cane that had been owned by either Mr. Mack or his recently deceased wife.

According to the Defendant's children, the Defendant broke the cane in half and threw it into another yard just after the assault. The Defendant suffered no injury in this so called "tussle." Viewed in its entirety the evidence introduced at trial amply supported the convictions for all offenses.

I.	The Defendant should not be acquitted on all charges as he failed to establish the affirmative defense of self-defense.

The Defendant claims that defense witnesses established that the complainant, Robert Mack, was the aggressor, and that the Defendant acted in self-defense. When justification is raised by the Defendant when non-deadly force was used, the Commonwealth may prove that this use of force was not justified if it can show, beyond a reasonable doubt, any of the following elements: that the Defendant did not reasonably believe that it was immediately necessary for him to use force to protect himself against the unlawful force by the alleged victim. The Commonwealth must prove either: (i) that the defendant did not actually believe he was in danger of becoming the victim of unlawful force such that he needed to use force to defend himself at the moment he used it; or, (ii) that while the defendant actually believed he needed to use such force, his belief was unreasonable in light of all circumstances known to him. 18 Pa.C.S.A. § 505(2).

When justification is raised by the Defendant when deadly force was used, the additional requirements are more restrictive upon the Defendant. The Commonwealth may prove that this use of force was not justified if it can show, beyond a reasonable doubt, any of the following elements: that the Defendant did not reasonably believe that he was in immediate danger of death or serious bodily or that it was necessary then and there to use deadly force upon that person to protect himself. In addition, if the Commonwealth proves that the Defendant either provoked or continued the difficulty which led to the use of deadly force or that the Defendant violated a duty to retreat the justification of self-defense with use of deadly force fails.

In the light most favorable to the Defendant in the instant matter, the defense witnesses only established that unreasonable amount of force was used against Mr. Mack. There was no

9

credible evidence presented that the Defendant believed that the level of force he used was necessary to protect himself from Mr. Mack. To the contrary the witnesses called by the Defendant supported the defensive actions of Robert Mack was clearly entitled to protect himself from the Defendant, who was an unwanted intruder and aggressor from harming him in the foyer of his own home.

Additionally, the jury reasonably determined that the conflicting version of events presented by the defense witnesses to be incredible. Rasheed Thomas, testified that he was visiting a friend who happens to live on the same block as Darius Hargrove. Mr. Thomas stated that as he was walking down the street, he could see Mr. Mack in an altercation with one of the children, and the Defendant walking towards the altercation. Rasheed Thomas admitted that he did not see much of the actual exchange between Mr. Mack and the Defendant. He singularly remembered that Mr. Mack raised his cane once sometime during the fray. He did not remain to see what happened thereafter and kept walking. (N.T. 2/13/2015, pp. 17-28).

Rasheed Thomas's testimony does not even remotely establish that the Defendant's actions were justified, nor did he establish that the Defendant acted in self-defense. This witness could not discern even the location of the altercation between Mr. Mack and the Defendant. He would only give "the gist" of the vicinity. He excused his spotty observation abilities by remarking that it was difficult to see because it was dark around 9:30 pm, and that he had been walking up the opposite side of the street. Throughout the testimony, Mr. Thomas claimed that he did not know how long ago this fight occurred and that he did not pay attention because it was none of his business. (N.T. 2/13/2015, pp. 24-28).

The Defendant also alleges that defense witnesses John Bass, Cory Taylor, Anyiya Williams, and Amiya Hargrove established the affirmative defense of self-defense. Each of these

witnesses however presented materially conflicting, biased and confused versions of the events. Each witness could not recall critical portions of the event despite claiming to be present. They could only confirm that the Defendant and Mr. Mack exchanged aggressive words concerning the Defendant's children behavior in front of Mr. Mack's house. Each witness further testified to observing Mr. Mack walk back into the vestibule of his front porch, with the Defendant in hot pursuit of him. Many of these witnesses remembered that Mr. Mack attempted to "shoo" the Defendant away from his home with a cane well before the Defendant grabbed it from him, beat him over the head, broke it in half and threw it over the fence and ran back up the street when his wife told him to stop.

At trial, John Bass testified that he could specifically observe Mr. Mack hit the Defendant with the cane multiple times on the side of his arm and shoulder from his home across the street of 1744 Bambrey Street. John Bass also claimed that the Defendant, whom he knows as "Dee," never hit Mr. Mack at all. He claimed Mr. Mack, despite his advanced age, and in need of a cane to remain upright, possessed "superman" strength. Apparently, it was a complete mystery to him as to how Mr. Mack sustained his head wounds. He also claimed that neither Rachel Parris nor Michelle Grant were present for the alteration even though other witnesses squarely placed these neighbors within a few feet of the fray.

This trial testimony, however, materially conflicted with his previous signed and sworn statement given to the Detective Anderson close in time to the attack. In this statement, Mr. Bass admitted he could not see what was happening in the Mr. Mack's vestibule from his home across the street of 1744 Bambrey Street and he did not see if or where Mr. Mack hit the Defendant. (N.T. 2/1/3/2105 PP. 56-65) Mr. Bass' bias was self-evident as a close friend of the Defendant and the Defendant's wife for many years.

11

Anyiya Williams, the Defendant's thirteen year old large build step-daughter and Amiya Hargrove, the Defendant's seven year old daughter, testified that they were among the group of children that had initiated the dispute with the victim in front of his house. Their motivation on behalf of the Defendant was obvious. Their testimony factually conflicted with each other. The other two witnesses, also friends with the Defendant and Mr. Bass admitted to having had limited views of the commotion and difficulties with memory of salient information.

Of all the witnesses presented, Ms. Parrish obviously had a better than bird's eye view of the assault of the events as they unfolded. Ms. Parrish in an unbiased manner testified to having a mentor-type relationship with the Defendant's children, and on that night she observed the children refusing to leave from the front of Mr. Mack's home. Ms. Parrish testified to watching the Defendant make back and forth striking motions with the cane in his hand over Mr. Mack's head. She saw pools of blood everywhere on Mr. Mack and his property.

The Defendant's "eyewitnesses" also unwittingly corroborated Ms. Parrish's version of events when they said she had been present. They remembered seeing the Defendant walk up to the victim's vestibule in which Mr. Mack was standing, and that after Mr. Mack takes his cane towards the Defendant, the Defendant ripped the cane from Mr. Mack's grip. Justifiable self-defense was not remotely supported by the Defendant's witnesses.

The Commonwealth need only prove either that the defendant did not actually believe he was in danger of becoming the victim of unlawful force such that he needed to use forced to defend himself; or, that while the defendant believed such force was necessary, this belief was unreasonable. Defense witnesses simply established that the Defendant used force. There was no credible evidence presented that the Defendant believed that this force was need to protect himself from unlawful force of Mr. Mack who was trying to protect himself from an aggressor from

12

harming him in the foyer of his own home. Similarly, in light of all testimony and evidence at trial, the Defendant's use of non-deadly force was unreasonably necessary.

## II. There is sufficient evidence to support convictions of Aggravated Assault, Possession of an Instrument of Crime, and Recklessly Endangering Another person.

In reviewing the sufficiency of evidence, an appellate court considers "whether the evidence presented at trial was sufficient to establish all elements of the crime beyond a reasonable doubt." *Commonwealth v. Burton*, 2 A.3d 598 (Pa. Super. Ct. 2010). The appellate court views all of the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as verdict winner. *Id.* Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. *Id.* The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Feliciano*, 2013 PA Super 117, 67 A.3d 19 *quoting Commonwealth v. Stokes*, 2011 PA Super 261, 38 A.3d 846, 853-854 (Pa. Super. 2011) (internal citations and quotations omitted).

### a. Sufficient evidence at trial established the Defendant acted with the specific intent to cause serious bodily injury, thus supporting a conviction for Aggravated Assault.

A person may be convicted of Aggravated Assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under the circumstances manifesting extreme indifference to human life." 18 Pa.C.S.A. § 2702(a)(1); *Commonwealth v. Fortune*, 68 A.3d. 980, 984 (Pa. Super. Ct. 2013). "Serious bodily injury has been defined as 'bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member

13

or organ.'" *Id.* Intent must ordinarily be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances. *Id.*

The Pennsylvania Supreme Court established a totality of the circumstances test to be used to evaluate whether a defendant acted with the necessary intent to sustain an aggravated assault conviction. *Fortune*, 68 A.3d 980 at 984, *quoting Commonwealth v. Alexander*, 477 Pa. 190, A.2d 887 (1978). The Supreme Court reaffirmed the totality of the circumstances test in *Commonwealth v. Matthew*, 589 Pa. 487, 909 A.2d 1254 (2006), and articulated legal principles which apply when the Commonwealth seeks to prove aggravated assault by showing that the defendant attempted to cause serious bodily injury. Specifically,

> *Alexander* created a totality of the circumstances test, to be used on a base-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury. The Court provided a non-exhaustive list of factors that may be considered in determining whether the intent to inflict serious bodily injury was present; including, evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attach, and his statements before, during, or after the attack which might indicate his intent to inflict injury. *Id.*

Applying the totality of the circumstances test from *Alexander*, as well as the holding from *Matthew*, the Defendant in the instant case possessed the requisite specific intent to cause serious bodily injury. The 91 year-old complainant, Mr. Mack, credibly testified during trial that after telling the Defendant's children to go home because it was late, Mr. Hargrove came up to his door stating that his children can "play wherever they want." (N.T. 2/12/2015, pg. 48). Mr. Mack further stated that after he told the Defendant to get of his steps, he next remembers being hit with his own cane. Mr. Mack suffered serious injuries to the back of his head, neck, and face.

To further corroborate the testimony of Mr. Mack, Michelle Grant testified to hearing screaming outside. Due to the commotion outside, Ms. Grant went to her front door and saw the

14

Defendant gripping Mr. Mack, and Mr. Mack was struggling to stand upright. Michelle Grant also witnessed the profuse bleeding coming from Mr. Mack's head. Mr. Mack was disheveled, missing his shoes, and had a gash on his face; the blood was not only on his face, but on the sidewalk in front of Mr. Mack's door. (N.T. 2/12/2015, pp. 69-74).

Multiple Philadelphia police officers also testified during this trial to the extent of Mr. Mack's injuries, and the lack of injury to the Defendant. Officer Whittaker testified that he did not observe a single injury to the Defendant, yet Mr. Mack was significantly bleeding from his head while he was transported to the hospital for emergency life-saving treatment. The intent to cause serious bodily injury was sufficiently proven. The Defendant repeatedly struck the frail old victim over the head with the victim's long wooden cane, which is a deadly weapon, before angrily pulling him down a flight of concrete steps with such force that caused the victim to lose his shoes in the process. Thus, the totality of the evidence amply supports the conviction of Aggravated Assault.

### b. Sufficient evidence existed to support a conviction for possessing an instrument of a crime.

The Defendant next asserts that he should be acquitted of the charge of possession of an instrument of crime because a cane, per se, is not a weapon, and in the instant case was not used in a criminal manner or with criminal intent. For a person to be found guilty of possessing an instrument of crime, the Commonwealth must prove three elements beyond a reasonable doubt. It must be proven that (1) a defendant possessed the instrument with the intent to employ it criminally; (2) the instrument is one commonly used for criminal purposes; and (3) a defendant possessed the instrument under circumstances not manifestly appropriate for lawful uses. *Commonwealth v. Gladden*, 445 Pa. Super. 434, 444, 665 A.2d 1201, 1206 (1995); *Commonwealth*

15

*v. Foster*, 438 Pa.Super. 40, 44, 651 A.2d 163, 165 (1994); *Commonwealth v. Correa*, 437 Pa.Super. 1, 10, 648 A.2d 1199, 1203 (1994), *allocatur denied*, 540 Pa. 617, 657 A.2d 487 (1995); *Commonwealth v. Meekins*, 434 Pa.Super. 587, 590, 644 A.2d 765, 766 (1994). See 18 Pa.C.S.A. § 907.

In the instant case, the Defendant possessed the cane after he physically ripped from the defending hand of Mr. Mack. He further took this long wooden cane and repeatedly beat the complainant over the head until he was bleeding from a large gash and used it to drag Mr. Mack down a flight of concrete steps. The evidence strongly supports the jury's conclusion that the Defendant was intentionally employing the cane to assault Mr. Mack. Obviously this use was for criminal purposes, and not for the lawful use it was intended which was to provide assistance and balance for Robert Mack or his recently deceased wife.

### c. The evidence supports a conviction for recklessly endangering another person because the conduct of the Defendant did place Mr. Mack in danger of serious bodily injury.

The Defendant argues that he should be acquitted of reckless endangerment because his conduct did not rise to the level of reckless endangerment. A person commits the crime of recklessly engendering another person "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. *Commonwealth v. Rivera*, 349 Pa. Super. 303, 306, 503 A.2d. 11, 12 (1985). See 18 Pa.C.S.A. § 2705. This Court held, in *Commonwealth v. Trowbridge*, 261 Pa. Super. 109, 395 A.2d 1337 (1978), that recklessly endangering another person is a crime of assault which requires the "creation of danger." *Rivera*, 349 Pa. Super 303 at 306, 302 A.2d at 12.

In the instant case, it seems clear that there was sufficient evidence to support a conviction for recklessly endangering another person. Mr. Mack, at 91 years-old, was gripped by the

16

Defendant on his door step. The alleged "tussle" escalated so quickly that Mr. Mack lost his balance and his shoes came off. In addition, Ms. Grant testified to watching Mr. Mack lose his balance, while also looking completely disorientated and disheveled after the fight. The Defendant grabbed the cane and repeatedly struck Mr. Mack so hard that blood spattered onto the steps, sidewalk and in the victim's home. He would have bled to death had the neighbors failed to render assistance. Mr. Mack attempted to get away, but due to his age he was clearly no match for this stronger and younger opponent. Mr. Mack was forced to fearfully fight for his life as the Defendant swung at him and pulled him down the steps. He was so shaken up from the fight that during his testimony he had to pause frequently when recalling the events of that evening. It is clear that the complainant was in actual danger during this fight.

### III. The Defendant should not be granted a new trial as there is no merit to his claim.

Defendant asserts he should be granted a new trial because this Court erred in sustaining the Commonwealth's objection to the following question posed by defense counsel: "And in all your time visiting your friend that lives there, have you ever witnessed any altercation between you or anyone else and Mr. Mack?" The question was sustained because it was irrelevant and unduly prejudicial and in violation of Pa. Rules of Evidence 403, 404 and 405. Thus, this claim is without merit.

17

CONCLUSION

In reviewing the entire record, this Court finds no harmful, prejudicial, or reversible error. Accordingly, the judgment of the trial court should be affirmed.

By the Court,

DATE: July 6, 2016

Anne Marie B. Coyle, J.